[L. A. No. 9940. In Bank.—December 8, 1927.]

## COUNTY OF VENTURA, a Body Corporate and Politic of the State of California, Petitioner, v. JASPER BARRY, as Assessor, etc., Respondent.

[1] Fees—Assessors—Section 4252, Political Code.—The amendment to section 4252 of the Political Code made in 1925, which omits therefrom language theretofore inserted in the amendment of 1923, as follows: "All commissions or fees now or hereafter allowed by law shall be paid into the county treasury and no compensation shall be allowed the assessor for preparing the military roll of a county of this class," leaves section 4290 of the Political Code in full operation and entitles the assessor of Ventura County to retain six per cent of the total amount collected by him as assessor on unsecured taxes levied upon personal property taxed within said county.

[2] Statutory Construction — Repeal of Repealing Act—Revival of Statute — Rule.—The statutory rule against the revival of a statute by the repeal of a repealing act relates to absolute repeals, and not to cases where a statute is left in force and all that is done in the way of repeal is to except certain cases from its operation. In such cases the statute does not need to be revived, for it remains in force, and the exceptions being taken away, the statute is afterwards to be applied without the exception.

[3] Id. — Amendments to Statute — Subsequent Expressions of Legislature. — A subsequent expression of the law-making power on the same subject must be given control over the provisions of earlier statutes.

---

(1) 37 **Cyc.**, p. 981, n. 37.    (2) 36 **Cyc.**, p. 1101, n. 72.    (3) 36 **Cyc.**, p. 1147, n. 25.

APPLICATION for a Writ of Mandate to require an assessor to pay into the county treasury certain fees collected by him. Writ denied.

The facts are stated in the opinion of the court.

---

2. Effect of repeal or amendment of repealing statutes as revival of repealed statute, note, **Ann. Cas.** 1918B, 281. See, also, 23 **Cal. Jur.** 718; 25 **R. C. L.** 934. Effect of repeal of statute, notes, 12 **Am. Dec.** 480; 94 **Am. Dec.** 217.

James C. Hollingsworth, District Attorney of Ventura County, for Petitioner.

Robert M. Clarke, Clarke & Bowker and Walter E. Barry for Respondent.

PRESTON, J.—Petition for writ of mandate directing and compelling respondent, as assessor of the county of Ventura, to pay to H. R. Vandelinder, as treasurer of said county, the sum of $8.85 now retained by said respondent for his own use, as six per cent of the sum of $147.60 collected by him as taxes on unsecured personal property within the said county belonging to Star Petroleum Company, a corporation.

[1]   The question is whether or not respondent, as assessor of Ventura County, is entitled to collect fees in accordance with the provisions of section 4290 of the Political Code, that is, retaining six per cent of the total amount collected by him as such assessor as unsecured taxes levied upon personal property taxed within the said county.

Respondent's contention is that said section 4290 authorizes such retention of fees by him; that said section is the general law applicable to all cases where there is no special provision to the contrary in existence; that section 4252 of the Political Code is the special provision relating to the county of Ventura, and that inasmuch as there is no inhibition in said section 4252 against the retention of said fees, the provision of section 4290 authorizing retention is applicable to him.

After a most careful research among the statutes and decisions, including an independent investigation upon our part, we are constrained to conclude that respondent is correct in his contention, and under the law as it is now written he has the right to retain such percentage. The question presented is purely one of statutory construction.

Section 4290 as it existed on the twenty-second day of June, 1923, and as it now exists, in so far as material to this controversy, was and is as follows: "The salaries and fees provided in this title shall be in full compensation for all services of every kind and description rendered by the officers named in this title either as officers or *ex-officio*

officers, their deputies and assistants, *unless in this title otherwise provided,* and all deputies employed shall be paid by their principals out of the salaries provided in this title, unless in this title otherwise provided:

"Assessor. Provided and except, that the assessor shall be entitled to receive and retain for his own use, *unless in this title otherwise provided,* six per cent of personal property tax collected by him, as authorized by section three thousand eight hundred twenty, and fifteen per cent of all amounts collected by him for poll taxes, and road poll taxes, and also five dollars per hundred names of persons returned by him as subject to military duty, as provided in section one thousand nine hundred one . . . "

On the said twenty-second day of June, 1923, section 4252 of the Political Code, after providing for salaries for the assessor and his deputies was amended and contained the following clause (Stats. 1923, p. 1210): "All commissions or fees now or hereafter allowed by law shall be paid into the county treasury and no compensation shall be allowed the assessor for preparing the military roll of a county of this class." However, by the statutes of 1925 (p. 71), said section 4252 was again re-enacted with the above language omitted.

It is the contention of petitioner that the enactment of 1923 repealed, in so far as the county of Ventura was concerned, said section 4290, relating to retention of percentages on unsecured personal property taxes collected by the assessor, and that the subsequent omission or repeal of the above quoted language by the act of 1925, did not serve to re-enact the repealed provisions of section 4290. In this contention petitioner calls to his aid section 328 of the Political Code, which reads as follows: "No act or part of an act, repealed by another act of the legislature, is revived by the repeal of the repealing act without express words reviving such repealed act or part of an act." This section of the code is undoubtedly effective in all cases meeting the test therein provided for. It applies to implied repeals as well as express repeals (*County of Yolo* v. *Colgan,* 132 Cal. 265, 276 [84 Am. St. Rep. 41, 64 Pac. 403]).

The real question presented, however, is whether or not the 1923 provision of section 4252 did repeal expressly or

by necessary implication any portion of said section 4290. It may here well be noted that section 4290 is a substantial duplicate of section 215 of the County Government Act of 1897 (Stats. 1897, p. 672), which latter section in turn was a substantial re-enactment of section 216 of the County Government Act of 1893 (Stats. 1893, p. 507). It may also here be noted that section 4252 of the Political Code, now applicable to Ventura County, is but a re-enactment of what was formerly section 4259 of said code, which in turn was a substantial duplicate of section 187 of the County Government Act of 1897 (Stats. 1897, p. 543), which in turn was a substantial re-enactment of section 192 of the County Government Act of 1893 (Stats. 1893, p. 463).

In other words, these two code sections have been side by side in the legislation of this state respecting this subject for more than thirty years. The clause substantially as above quoted as a part of the act of 1923 has existed continuously since 1913 (Stats. 1913, pp. 1177–1179 and was continued in the re-enactments of that section in 1915 (Stats. 1915, p. 224); 1917 (Stats. 1917, p. 127), and 1921 (Stats. 1921, p. 678). In other words, from 1893 to 1913, a period of twenty years, the assessor of Ventura County was entitled under the law to collect percentage fees. From 1913 to 1923, a period of ten years, he was denied that privilege. In 1925 said clause, as above stated, was omitted from the re-enactment of said section, and we can see no escape from the conclusion that the assessor of Ventura County is again entitled to resume the right to collect this percentage and retain it for his own use.

If each enactment of section 4252 and its forerunner, section 4259, from the year 1913 to the year 1923, was a repeal of section 4290, and each re-enactment of 4290 was in turn a repeal of section 4252, then each of these sections has been at least twice repealed.

We think that petitioner has misconceived the principle of statutory construction applicable to this situation. In the first place, it is plain that these two statutes are *in pari materia*. It is also plain that there is no inherent antagonism between them, for section 4290 contains the significant language "unless in this title otherwise provided." In other words, the general section, 4290, is to apply in all

cases not "otherwise provided" for in some other section of the same title, and where otherwise provided for, the general law is not repealed, but remains in abeyance only.

[2] The rule of law applicable to this situation is well stated as follows: "The statutory rule against the revival of a statute by the repeal of a repealing act relates to absolute repeals, and not to cases where a statute is left in force and all that is done in the way of repeal is to except certain cases from its operation. In such cases the statute does not need to be revived, for it remains in force, and the exception being taken away, the statute is afterwards to be applied without the exception; . . . " (25 R. C. L. 934.)

The rule has again been stated by the annotater (Ann. Cas. 1918B, p. 284) in a note in the case of *Manchester Twp. Supervisors* v. *Wayne Co. Commrs.*, 257 Pa. St. 442 [101 Atl. 736], where the following language is used: "A statute abrogating the common law rule as to the revival of an act by the repeal of the repealing act, has no application where the effect of an act is not to abrogate entirely a former act but merely to withdraw from the operation of the earlier act a portion of the cases included within its terms, leaving the earlier act still in force except as to the cases specifically provided for by the later one. Under such circumstances the repeal of the later act has the effect of again bringing the cases provided for by it within the operation of the original act."

The principle is again stated in *Ex parte Williamson*, 116 Wash. 560 [200 Pac. 329, 331], as follows: "It is argued, however, that this conclusion leaves the matter where it was before; that the act operated to suspend the general statutes in so far as it conflicted with them, and that these statutes are not revived by the suspension of the suspensatory act. But the rule is otherwise. The rule against the revival of a statute by the repeal of a repealing statute relates to absolute repeals only, and not to instances where the statute is left in force, and all that is done in the way of repeal is to except certain cases from its operation. In such instances the original statute does not need to be revived, for it remains in force, and, the exception being taken away, the statute is to be applied without the exception."

In the case of *Pepin Tp.* v. *Sage,* 129 Fed. 657 (note, Ann. Cas. 1918B, p. 285), it appeared that a statute defining the boundaries of a township and city was nullified by the enactment of a statute placing a part of the territory within the limits of a village. It was claimed that under the Minnesota constitutional provision prohibiting the revival of a repealed statute by the repeal of the repealing act, the statute was not revived by the repeal of the village act. Applying the exception as set out above, the court said: "We think these provisions are not applicable to the act dissolving the village. Originally the township and city included the territory in question, and the special acts which placed it within the village contain no reference whatever to the township or city, or to their boundary lines, or to the statutes defining them. The statutes creating the township and the city were not at any time repealed, but were left in force. The township and the city were not at any time extinguished, but remained in existence under the operation of those statutes. The effect of the special acts creating the village and defining its boundaries was to except the territory covered by it from the township and the city and from the operation of the statutes creating them. Subject to that exception, the legislative will, as at all times registered and expressed in living, operative, and valid statutes—not enactments entirely repealed, either expressly or by implication—placed this territory in the township and city. When the special acts which by implication put that exception upon these statutes were repealed, the exception was at an end. These statutes and their definitions of the boundaries of the township and city were then operative as if there had been no exception. They did not need to be revived because they had not been repealed."

The principle is likewise recognized in 23 Cal. Jur., section 100, page 718, as follows: "A general statute, controlled in some of its provisions by a subsequent special statute, is revived by amendment of the latter, intended to give effect to the former. And in cases of conflict between a general and special act, which results in an implied repeal of certain provisions of the former, the subsequent repeal of the latter act may operate to revive the provisions of the general act."

The case of *People* v. *Hunt,* 41 Cal. 435, itself furnishes an illustration of the difference between the rule here announced and the cases covered by section 328 of the Political Code. This principle is also recognized in the case of *People* v. *Phoenix,* 6 Cal. 92, and *Smith* v. *Mathews,* 155 Cal. 752 [103 Pac. 199]. That the two sections of the code in question are not repugnant to each other as they now read, nor as they formerly read, is implied in the statement of the court found in *County of Sacramento* v. *Pfund,* 165 Cal. 84, 88 [130 Pac. 1041, 1042], as follows: "Section 4235 merely fixes the compensation and leaves section 4290 to declare what additional compensation may be received and what is forbidden." Section 4235 referred to is a section in all respects similar to section 4252 here under consideration. (See, also, *Alameda County* v. *Dalton,* 148 Cal. 246, 248 [82 Pac. 1050].)

The above conclusions dispose of the contention that the rule of *expressio unius est exclusio alterius* should be made applicable to section 4252, which has for its provision the following language: "In counties of the twenty-third class the county officers shall receive as compensation for the services required of them by law or by virtue of their offices the following salaries, fees and expenses, to-wit: . . ."

As above noted, section 4252 must be read in connection with section 4290, and when they are read together there is no room left for the operation of this rule.

Neither can any weight be given to section 1857 of the Political Code, which provides respecting taxes collected for school purposes that the assessor shall not have fees or compensation for assessing, collecting, or receiving the same. The latest amendment to section 1857 was in 1893 (Stats. 1893, p. 264). The latest amendment and re-enactment of section 4290 was, as we have noted, in 1917 (Stats. 1917, p. 1323). [3] As the latter re-enactment is a subsequent expression of the law-making power on this same subject, it must be given control over the provisions of the earlier section and no authority need be cited to sustain this rule.

We can take no notice of the contention that the county assessor of Ventura County during this and subsequent fiscal years may, on account of the conditions pertaining in that county, collect a large amount of taxes and thereby

secure for himself unusual compensation for performing the duties of his office. It is, however, consoling to think that for every dollar the assessor gets, the county treasury will receive approximately sixteen dollars. It has been the custom throughout the state for perhaps forty years to allow these commissions to assessors, and such policy has no doubt been a wise one, for by so doing large amounts of taxes have been secured for the treasury which but for this incentive might well have been lost to it.

The application for mandate is therefore denied.

Shenk, J., Richards, J., Curtis, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.