## Commonwealth ex rel. v. White et al.

*Portser, Gregg & McConnell*, for petitioners.

LAIRD, J., March 19, 1945.—This is an application by the Supervisors of Unity Township for a writ of mandamus to compel the county to repair and maintain portions of a road in Unity Township, which was formerly a turnpike. Such action was brought by the filing of a petition for an alternative writ of mandamus to which the county made a return.

It is agreed by the parties that the matter can be disposed of upon the pleadings as all of the relevant and material facts are therein set forth and are not in dispute. Thus it is agreed that the road in question was

at one time a portion of the Greensburg & Stoyestown Turnpike Road. It is agreed that the road was later abandoned by the Greensburg & Stoyestown Turnpike Company and that the said road, after its abandonment, pursuant to the Sproul Act of May 31, 1911, P. L. 468, 36 PS §1092, became a State highway, part of one of the most important of the State highways in the Commonwealth, to wit, the Lincoln Highway or U. S. Route 30—and that on February 11, 1929, and again on September 30, 1930, the State Highways Department, with the approval of the Governor, pursuant to said Act of 1911, as amended, 36 PS §61, relocated two portions of the said road lying in Unity Township, the one being one half of a mile in length and the other five miles long and, upon the relocations thus made, abandoned the two portions of the State highway in question.

It is the contention of the supervisors that under the Act of April 25, 1907, P. L. 104, 53 PS §569, the duty of maintaining the abandoned Greensburg & Stoyestown Turnpike Road was upon the County of Westmoreland and, when these portions of the turnpike which became a part of the State highway were later abandoned as a State highway, the duty of maintenance was put upon the County of Westmoreland by the Act of April 27, 1927, P. L. 392, 36 PS §591.

On the contrary the county contends that under the Act of June 11, 1935, P. L. 320, which was later amended by the Act of May 21, 1943, P. L. 461, the duty of repairing and maintaining the portions of the abandoned highway devolved upon Unity Township, in which the portions of the road so abandoned are located.

It is admitted by the county that the Act of April 25, 1907, P. L. 104, placed responsibility for the maintenance of the road upon the county. This act, however, was repealed by the Act of May 10, 1909, P. L. 499, which later act provided, inter alia, that "when any turnpike company or association has heretofore aban-

doned or may hereafter abandon its turnpike, or any part thereof . . ." such part ". . . shall be properly repaired and maintained at the expense of the township, city or borough in which the said turnpike or part thereof lies . . ."

However, this Act of 1909 was itself repealed by the Act of March 15, 1911, P. L. 21, and it is also admitted by the county that the Act of 1911, supra, had the effect of reinstating the Act of April 29, 1907, supra, placing responsibility for the maintenance of the portions of the road upon the county: Winters v. Koontz, 60 Pa. Superior Ct. 134, which was affirmed in Somerset Township Supervisors v. Somerset County Commissioners, 251 Pa. 164. See also Manchester Township Supervisors v. Wayne County Commissioners, 257 Pa. 442.

The county contends, however, that this Act of 1907 was again repealed or superseded by the Act of June 11, 1935, P. L. 320. This is the crux of the whole case, the county pointing to the Act of 1935 as authority for its position in the matter, and the township strenuously contending that the Act of 1935 does not repeal or supersede the Act of April 25, 1907, P. L. 104, and that by an examination of the title to the Act of 1935 or the body of the act no one could ascertain that there was any intention to disturb the legislation which at that time had been on the books for more than 20 years, and which had fixed the liability on the several municipal divisions of the State for the maintenance of abandoned turnpike roads or portions thereof and that any attempt to construe the Act of 1935 as repealing the Act of 1907 would do violence to article III, sec. 3, of the Constitution of the Commonwealth, which provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title." The township earnestly insists that, as there is nothing in the title to the Act of 1935, supra, to put the citizen on notice that the

legislature expressly intended to repeal the Act of 1907, it is still in full force and effect, and must be so considered.

It is not contended by the county, however, that the Act of 1935 expressly repeals the Act of 1907. It is the county's contention, however, that the provisions of the two acts are so repugnant that they cannot stand together and that the provisions of the later act must prevail.

". . . if two acts which cover the same subject matter are repugnant in any of their provisions, the latter operates. to the extent of the repugnancy as a repeal of the former . . . ; and it is not necessary that the later act contain a provision expressly repealing the prior act or parts thereof . . .": Commonwealth v. Gross, 145 Pa. Superior Ct. 92, 96. See also Commonwealth ex rel. Graham v. DeCamp, 177 Pa. 112, where it is said in the syllabus, which syllabus is fully borne out by the opinion:

"An earlier statute is repealed by a subsequent one only in those particulars wherein it is clearly inconsistent and irreconcilable with the later enactment; the leaning of all courts being against repealing the positive provisions of former statutes by construction unless there be such a manifest and total repugnance between the two enactments that they cannot both stand. It is not enough that there is a discrepancy between different parts of a system of legislation on the same general subject; there must be a conflict between different acts on the same specific subject."

We are of opinion that the provision in the Act of 1935, supra, which provides: ". . . the portion of the public road or highway, thus abandoned as a State highway route, shall be maintained by, and at the expense of, the authorities responsible for the maintenance of said public road or highway prior to its having been established as a State highway or a State aid highway, and where any such abandoned section of

State highway was at any time a part or portion of a turnpike or toll road, the abandoned portion shall be maintained by, and at the expense of, the township wherein it is located"; is so repugnant to, and in conflict with, the provisions of the Act of 1907, supra, that they both cannot stand and that the Act of 1907 must, therefore, give way to and be superseded by the Act of 1935.

All public roads are the property of the State and it has the right through the legislature to designate what agency or municipality shall maintain them.

"The highways of the Commonwealth, apart from those owned privately, are the property of the state and it may, within constitutional limitations, set up any agency it sees fit to improve, maintain, repair, administer and control them.

"Counties and townships do not have any common-law power to build or improve roads and the statutory directions for their creation and abolishment must be strictly complied with": Shapera v. Allegheny County, 344 Pa. 473 (syllabus). See also Gross et al. v. Westmoreland County, 26 Westm. 107.

The State has exercised this right by frequently changing the responsibility for the maintenance of turnpikes which have become public roads. The last act of assembly, the Act of June 11, 1935, P. L. 320, as amended by the Act of May 21, 1943, P. L. 461, places this responsibility upon the township in which the road lies. The roads in question lying in Unity Township, that township is, therefore, liable for their maintenance. It follows, then, that the township supervisors are not entitled to an order directing the County of Westmoreland to repair and maintain the said roads formerly part of the Greensburg and Stoyestown Turnpike, and the prayer of the petition must, consequently, be denied and refused. We, therefore, enter the following decree:

And now, to wit, March 19, 1945, after argument and after due and careful consideration, it is ordered, ad-

judged, and decreed, both judges concurring, that the prayer of the petition for an alternative writ of mandamus be and the same hereby is denied and refused.