[No. 32234-6-I.   Division One.   March 28, 1994.]

JOHN POSTEMA, ET AL, *Appellants*, v. SNOHOMISH COUNTY, *Respondent.*

*Eric R. Stahlfeld, Richard B. Sanders,* and *Sanders Law Office,* for appellants.

*Seth R. Dawson, Prosecuting Attorney,* and *Linda Scoccia, Deputy,* for respondent.

PEKELIS, A.C.J. — The Snohomish County Department of Planning and Community Development (DPCD) issued a notice of code violation and civil penalty order for unauthorized grading to John and Maryke Postema, the owners of a nursery business known as Flower World, Inc. (hereinafter

Postema). Postema appealed, and a Snohomish County hearing examiner sustained the notice and order. Upon a writ of review, the trial court affirmed the decision of the hearing examiner. On appeal, Postema contends the hearing examiner misinterpreted the Snohomish County Code (SCC). We affirm.

I

In 1991, Postema purchased a 15-acre parcel of property in Snohomish County, which he intended to use for expansion of a nursery business. Postema commenced laying out an internal roadway on the property and preparing several areas for the placement of above-ground plant containers. During this process, he "scraped" 8 to 12 inches of topsoil and placed it in mounds, and then placed a layer of gravel on the scraped surfaces for the roads and planting areas.

DPCD inspector Don Smith visited the site in August 1991. Following this investigation, Smith determined that Postema was "grading without permit" in violation of SCC 17.04.280, and posted a stop work order.

DPCD then issued a notice of code violation and civil penalty order. The notice identified the violation as "[g]rading without the necessary governmental permits and/or approvals as required by Snohomish County Code, Section 17.04.280." Postema was ordered to cease all grading activities on the site, to apply for a grading permit within 30 days of the notice, and to complete work within 60 days of receiving a permit.[1] The notice advised that civil penalties of $250 per day per violation would be assessed until completion of the ordered corrections, and that failure to comply with the notice and order constituted a misdemeanor.

Postema appealed, and a public hearing was held before a Snohomish County hearing examiner. The examiner concluded that Postema's activities "were required to have been conducted under the auspices of a valid grading permit",

---

[1]Because the property sloped to the east toward a drainage course/stream corridor near the east border of Postema's property, DPCD also ordered Postema to provide a "Temporary Sedimentation and Erosion Control Plan" within 48 hours and to install the plan within 48 hours of its approval.

and that grading activity had been conducted on the property in violation of SCC 17.04.280. The examiner further ruled that the DPCD compliance order had properly called for the submittal of a plan, and sustained the DPCD notice and order.[2]

Postema petitioned for and obtained a writ of review from the Superior Court. The court affirmed the decision of the hearing examiner and denied Postema's motion for reconsideration. Postema now appeals to this court.

## II

Postema argues that the hearing examiner erred in concluding that the relevant portion of the Snohomish County Code, SCC 17.04.280, was in effect at the time of his activities giving rise to the violation in question. He contends that section .280 had been repealed by the county council and was no longer in effect.

■ Appellate review of whether an administrative action was contrary to law is de novo. *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 618, 829 P.2d 217, *review denied*, 120 Wn.2d 1008 (1992).

Under the Snohomish County Code, "repeal of a[n] . . . ordinance shall not . . . revive any . . . ordinance which has been repealed thereby." SCC 1.01.090.[3] It is undisputed that in 1990, the Snohomish County Council adopted a series of ordinances collectively known as the "Aquatic Resource Protection Program" (ARPP). Part of the ARPP, ordinance 90-070, amended chapter 17.04 of the code and expressly repealed, *inter alia*, section .280.

---

[2]At the request of DPCD, the examiner's disposition altered some of the compliance dates, requiring that Postema submit a plan within 30 days of the date of the examiner's decision, and requiring that all grading activity within 200 feet of the stream be completed within 60 days of the receipt of a permit or exemption approval.

[3]This ordinance is consistent with Washington common law on the subject. *See In re Williamson*, 116 Wash. 560, 565, 200 P. 329 (1921) (referring in dicta to "rule against the revival of a statute by the repeal of a repealing statute"), *cited with approval in El Coba Co. Dormitories, Inc. v. Franklin Cy. PUD*, 8 Wn. App. 28, 33 n.3, 503 P.2d 1082 (1972), *aff'd on other grounds*, 82 Wn.2d 858, 514 P.2d 524 (1973).

Before the ordinance went into effect,[4] however, a referendum petition was filed pursuant to charter section 5.80, and the ordinance was referred to the voters in the general election. Ultimately, the ARPP ordinances, including ordinance 90-070, were rejected.

Postema argues that the referendum *repealed* ordinance 90-070, which had *repealed* SCC 17.04.280. Thus, Postema reasons that the rule against the revival of an ordinance by the repeal of a repealing ordinance, SCC 1.01.090, applies.

We disagree with Postema's characterization of the operation and effect of a referendum. The charter provides that upon the filing of a referendum petition, which must occur within 10 days after passage of an ordinance, "the ordinance . . . shall be suspended . . . until the voters have ratified and approved the ordinance". Charter § 5.80. Here, the voters did not ratify and approve the ordinance, but voted to "reject [it] at the polls", a power reserved by the people. Charter § 5.10. Nowhere does the charter use the term "repeal" in delineating the right of referendum.[5]

A repeal is defined as "[t]he abrogation or annulling of a previously existing law *by the enactment of a subsequent statute* . . .." (Italics ours.) Black's Law Dictionary 1299 (6th ed. 1990). When the voters reject an ordinance that has been referred to them, such action cannot be characterized as the enactment of subsequent legislation. Unlike a repealing ordinance, which creates positive law, the referendum procedure merely prevents an ordinance from becoming law in the first instance. *See State ex rel. Mullen v. Howell*, 107 Wash. 167, 173, 181 P. 920 (1919) (it is the act of the Legislature in adopting the measure, rather than the measure itself, that is referred to the voters).

---

[4]Generally, under the Snohomish County Charter, ordinances "take effect" 10 days after they are signed by the county executive or otherwise enacted. Charter § 2.110.

[5]By contrast, the charter does use the term "repeal" in connection with the enactment of an ordinance by the county council. *See* Charter § 2.115 ("The county council in repealing laws shall include in such proposed ordinance references to the law affected.").

To be sure, under the right of initiative, which is also reserved in the Snohomish County Charter, the people have the power to repeal ordinances that have gone into effect by enacting positive legislation. *See* Charter § 5.20. But, as the Supreme Court has recognized, the two procedures have distinct purposes: "The initiative enables the people to propose and enact laws independently of the Legislature and the referendum enables them to approve or reject laws passed by the Legislature." *In re Estate of Thompson*, 103 Wn.2d 292, 294, 692 P.2d 807 (1984). It is thus significant that a referendum petition is filed *before* an ordinance takes effect, and that it suspends the ordinance until ratification. Such a scheme obviates the need for the citizens, through the initiative process, to positively enact repealing legislation.

An ordinance rejected following a referendum vote is, for all intents and purposes, the equivalent of an ordinance that was never enacted at all. The referendum in this case, therefore, did not *repeal* ordinance 90-070; rather, the voters rejected it, and the ordinance simply never took effect.

We recognize that on one occasion, our Supreme Court incidentally remarked that a referendum involves "the potential repeal" of an ordinance otherwise enacted by a county council. *Snohomish Cy. v. Anderson*, 123 Wn.2d 151, 159, 868 P.2d 116 (1994). We do not believe this dictum was intended to alter the long-established understanding of the force and effect of nonratification of legislation by referendum, which has always been characterized in this State as a *rejection* of a legislative measure by popular vote. *See, e.g., Yelle v. Kramer*, 83 Wn.2d 464, 476, 520 P.2d 927 (1974) ("By the referendum . . . the electorate either approves or rejects an act of the legislature."); *State ex rel. Burt v. Hutchinson*, 173 Wash. 72, 75, 21 P.2d 514 (1933) (An act "confronted with the possibility of rejection by the voters . . . might never become operative . . ."); *Stetson v. Seattle*, 74 Wash. 606, 611, 134 P. 494 (1913) ("an ordinance is submitted to the people for their ratification or rejection"); *Federal Way v. King Cy.*, 62 Wn. App. 530, 541, 815 P.2d 790 (1991) (discussing

470

people's "power to reject legislation by referendum . . ."); *see also* Philip A. Trautman, *Initiative and Referendum in Washington: A Survey*, 49 Wash. L. Rev. 55, 55 (1973) ("The referendum empowers the people to approve or reject laws passed by the legislature.").

■ This interpretation is, moreover, consistent with the rationale for the rule against the revival of legislation by the repeal of repealing legislation. As explained by the Court of Appeals in *El Coba Co. Dormitories, Inc. v. Franklin Cy. PUD*, 8 Wn. App. 28, 33 n.3, 503 P.2d 1082 (1972), "in this complicated modern age [revival] would place too great a burden upon the legislature to search out all old laws and trace all subsequent legislation in relation thereto in order to be assured that no antiquated law was being inadvertently revived." In the referendum context, such concerns never arise, because *rejected* repealing legislation never takes effect; the status quo is maintained. Accordingly, there is no risk that antiquated laws will unexpectedly become revived.

In sum, because ordinance 90-070 was not "repealed", SCC 1.01.090 is inapplicable. We therefore conclude that the hearing examiner did not err in refusing to dismiss the DPCD notice and order on this basis.

The panel has determined that the disposition of Postema's remaining assignments of error has no precedential value. Thus, the balance of this opinion will not be published, but it has been filed as a public record. *See* RCW 2.06.040.

SCHOLFIELD and KENNEDY, JJ., concur.

Review denied at 124 Wn.2d 1023 (1994).