[Crim. No. 718. Third Appellate District.—October 2, 1923.]

## THE PEOPLE, Respondent, v. WILLIAM P. CUNNINGHAM, Appellant.

[1] CRIMINAL LAW — MANSLAUGHTER — PEDESTRIAN RUN DOWN BY AUTOMOBILE — VERDICT — EVIDENCE. — In a prosecution for manslaughter for the killing of a human being caused by an automobile driven by defendant running down the deceased, the verdict of guilty was sufficiently supported by the evidence, which showed that at the time of the collision the defendant was under the influence of liquor and was driving at an excessive rate of speed in a "close built up" district.

[2] ID.—INTOXICATION—EXCESSIVENESS OF SPEED — MANSLAUGHTER.— In such prosecution, the act of the defendant in producing the death of the deceased constituted the crime of involuntary manslaughter upon either the theory that at the time of the collision the defendant was driving while under the influence of liquor or upon the theory that at said time he was driving at an excessive rate of speed in a "close built up" district; in other words, the

---

1. Homicide by negligent operation of automobile, notes, **Ann. Cas.** 1918E, 1146; 16 A. L. R. 914; 21 A. L. R. 1504; 3 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403; L. R. A. 1918B, 954.

death of the deceased was brought about by the act of the defendant while he was engaged in the commission of two different misdemeanors or two different unlawful acts, neither of which, nor both taken together, amounted to felony.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. Stanley Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

James F. Gaffney and George E. Foote for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was accused of the crime of manslaughter in an indictment returned to the superior court in and for the county of Sacramento by the grand jury of said county. Said indictment charges that on the thirtieth day of March, 1923, in said city, the defendant "did then and there willfully and unlawfully and feloniously kill one James Seadler, a human being." Upon a trial of the defendant upon said charge the jury returned a verdict of guilty and the defendant appeals from the judgment and the order denying him a new trial.

There is but one point urged for a reversal and that is that the evidence is insufficient to support the verdict.

It appears that, between 11 and 12 o'clock on the night of the thirtieth day of March, 1923, the defendant, while driving an automobile through and over M Street in the city of Sacramento, ran into or against the deceased, who was then in the act of crossing from the south to the north side of M Street on Twentieth Street, in the city of Sacramento, causing the latter to be thrown violently to the ground; that the deceased sustained serious injuries, from the effects of which he died at the emergency hospital in the city of Sacramento within an hour after the collision occurred, he having been conveyed in an unconscious condition to said hospital a short while after he was hurt. The record discloses testimony showing, or which, believed by the jury, would warrant them in so finding, these facts: That the defendant, at the time of the killing of deceased and for

a short period prior thereto, was engaged in the business of carrying on an automobile repairing shop in the city of Sacramento, in partnership with one Goyette and another party by the name of Howard; that near the hour of 6 o'clock of the evening of the 30th of March, 1923, he and Goyette left their shop in a two-passenger Overland roadster, the latter driving the car; that when they reached a point on I Street, between Seventh and Eighth Streets, in said city, defendant got out of the car and Goyette proceeded on, in the car, to his home at 1630 F Street; that thereafter, or about 8 o'clock of said evening, Goyette returned to Seventh and I Streets and again met the defendant, who got in the car and together the two drove to L Street, between Fourth and Fifth, remaining there for a short time; that they later left L Street and went to Second and K, where they met an acquaintance by the name of Sullivan. Sullivan, at the invitation of one of the parties, got into the car and the three then drove to Seventh and I Streets and went to the room of Sullivan in a building situated on the northeast corner of Seventh and I. The three had several drinks of wine in Sullivan's room and then returned to the automobile and started for a drive about the city. They had gone a few blocks when it occurred to either Sullivan or the defendant that he had left a package of cigarettes in Sullivan's room. They thereupon returned to said room and when on their way back to the street they met two women, a Mrs. M. and a Mrs. C. They invited these women to take a ride with them and the women accepted the invitation and got in the machine. The defendant took the wheel and sat on the extreme left-hand side of the car. Sullivan sat next to him and Goyette sat on the extreme right. Mrs. M. sat on the lap of Sullivan and Mrs. C. on the lap of Goyette. They thus drove to the town of Washington, which is immediately across the river from the city of Sacramento, and went to a soft-drink establishment maintained in said town. They remained there for some time and each drank two or three glasses of claret wine. They then got in the car, their positions therein being the same as above described, and started out with the intention of going to a roadhouse in the direction of and beyond Thirty-first and M Streets. By devious routes through the city they finally reached a soft-drink saloon situated at Thirty-first

and M Streets. The defendant here left the car and went into said saloon and remained there for some fifteen minutes, a portion of which time was devoted to a conversation with the barkeeper. The other members of the party remained in the machine. There is no testimony that any of them drank liquor at the last-mentioned place. After the defendant returned to the machine he, with the other parties in the respective positions on the seat as already indicated, started the car west on M Street. When they reached Twentieth and M the deceased, who as above stated, was crossing M Street from the south to the north, was struck by the defendant's car, with the result as already explained. The railroad tracks of the Western Pacific run through the city of Sacramento from the north to the south limits thereof between Nineteenth and Twentieth Streets. The accident, if such it may be called, therefore, occurred near said tracks and the little cabin occupied by the watchman employed by the company to warn travelers of the approach of trains. The watchman testified that his attention was attracted to the car by reason of the fact that it was approaching the tracks at a very rapid rate of speed. He testified to having heard the crash incident to the striking of the deceased by the car and immediately following the collision heard moans or groans proceeding from the spot where the deceased was struck. He observed that it was a human being who had been struck and he thereupon gave notice to other persons of the same and shortly thereafter certain people who gathered about the scene of the accident caused the deceased to be taken to the emergency hospital. The watchman could not definitely say the rate of speed at which the car was traveling, but did declare that it was going at a very rapid rate. He testified that the car was not stopped, but went on, and, if anything, at a greater rate of speed than that at which it was going at the time it struck the deceased.

Mrs. C. testified that she was sitting on the lap of Goyette during all the time they were driving about the city and also at the time the deceased was struck. She stated that before the car reached the deceased she plainly saw him walking toward the north side of the street. She stated that after the deceased had been struck down the machine continued on at a rapid rate of speed; that someone in the car asked, "Did we not hit someone?" to which another of the party

replied in the negative. They proceeded down M Street until they reached either Fourth or Fifth when they turned toward N and finally, the car having bumped along the street as if something were wrong with one of the wheels, the defendant stopped and they all got out and inspected the car. It was discovered that the tire on the right front wheel of the car was missing and that the fender was so seriously bent as that it presented the appearance of having a large hole in it. The defendant then suggested that they drive to some point and leave the car and then send in a report to the police department the next morning that the car had been stolen. Accordingly, the defendant drove the machine (the other parties still with him in the car) to a point on Burnett Way, between Twenty-third and Twenty-fourth Streets, where they left the automobile and went to a street over which the street-cars operate, and took the first street-car that came along and went to Seventh and J Streets. Mrs. C. testified that the car, according to her judgment, was going at the rate of between twenty and twenty-five miles an hour at the time that the deceased was struck. She further testified that the defendant was in an intoxicated condition while driving the car. In fact, she declared, on cross-examination, that he was drunk.

Goyette testified that when the defendant, Sullivan, the two women, and he arrived at the town of Washington, they got out of the machine and went into a place where soft drinks and other liquids were dispensed and into one of the booths therein and ordered a bottle of wine; that he took one drink and then stepped into the barroom, leaving the other parties in the booth; that as far as he knew the defendant at that place drank two glasses of wine; that after remaining there for approximately three-fourths of an hour they all got into the car and recrossed the river to the Sacramento side, the defendant driving the machine. The parties, Goyette testified, occupied the single seat of the car in the manner above described. He testified that the defendant was under the influence of liquor. He further stated that he said to the defendant: "You had better let me drive because you are pretty well liquored up," and that the defendant replied, "No, I can drive; I can drive good," and, so proceeded the witness, "I didn't insist upon driving. I thought maybe he would be all right." He then testified

as to the ride through and over certain streets in Sacramento which led them to Thirty-first and M Streets and as to the running into the deceased. He testified, however, that he saw no one in front of the machine just before the collision occurred and, although he realized that the car had struck some object at Twentieth and M, he did not know or realize at the time what the object was.

It was shown that on the day following the killing of the deceased Mr. Howard, who, as seen, was a partner of the defendant and Goyette in the auto repair-shop business, reported to the police department that the roadster, in which the parties above named were riding at the time of the killing, had been stolen. A record was made by the police department of the alleged theft, but it seems that the officers began an immediate investigation of the cause or circumstances leading to the death of the deceased and so got possession of facts sufficient to indicate that the deceased was run into by the car while it was being run at excessive and unlawful speed; that their investigation led to the discovery of the machine on Burnett Way, between Twenty-third and Twenty-fourth Streets; that they took possession of the machine and kept the same in the yard back of the police station until and during the trial of the defendant. The tire of the right front wheel of the car was missing and the fender was badly bent.

The people introduced testimony showing that M Street, from Thirty-first to Nineteenth, is lined with buildings—residences, apartment houses, etc.—and that said street for the distance mentioned is thickly populated.

The above comprises a statement in substance of the important testimony presented by the people.

The defendant, testifying in his own behalf, declared that he was not intoxicated on the night of the 30th of March, 1923, and that he was not driving at a rapid rate of speed at the time that his car struck the deceased. He stated that he saw no one passing across the street in front of him as the car was approaching Twentieth Street. He thought possibly this was due to the fact that his vision was to some extent obstructed by Mrs. M., who was sitting on the lap of Sullivan, the latter, as shown, occupying the seat next to the defendant. He stated that he did not realize that his car had struck a human being and had heard one of the

parties say that no one had been hit; that for this reason and believing that he had not struck any person he did not stop the car. He stated that he drove the car from Thirty-first and M to where the collision occurred at the rate of between twenty and twenty-three or twenty-four miles an hour.

On cross-examination the defendant was asked whether or not, prior to his arrest, he made a statement to the district attorney, in the presence of several other persons, including the stenographer who took down the statement, in substance as follows: That on the night of the 30th of March he did not go to Thirty-first and M Streets in a car in the company of Sullivan, Goyette, and the two women referred to; that he went to his home and retired for the night at about the hour of half-past 9 o'clock; that he had a very indistinct recollection of meeting Mrs. C. some time in the evening of that day; that he did not drive from Thirty-first and M Streets west on the latter street either with the parties above named or anyone else on the night in question and that he was not in a car which struck any human being or any other object at Twentieth and M Streets on that night. He admitted making the statement that he had no positive recollection that Mrs. C. was with him and also that his car did not run into any person on the night referred to, but sought to excuse making that statement on the ground that he was not under oath. He said that he did not remember having made the statement that he went home and retired at 9:30 P. M. on the 30th of March.

The above statement of the testimony is sufficient to show that there is no reasonable ground for doubting that the verdict is amply supported. The jury could have found, as the verdict indicates that that they did find, the following facts: 1. That the defendant, while driving the automobile on the evening in question and at the time the deceased was struck down by the defendant's car, was under the influence of liquor (both Mrs. C. and Goyette, as will be noted, so testified); 2. That, at the time the deceased was knocked to the ground, as shown, the defendant drove the car west on M Street, at a rate of speed between twenty and twenty-five miles an hour. (As seen, not only did Mrs. C. so testify, but the defendant himself admitted on the witness-stand that he was driving the car at the time of the infliction of the

injury upon the deceased at a rate of speed in excess of twenty miles per hour. Furthermore, the fact that the tire of the right front wheel was knocked from the wheel and the fender bent in, as has already been described, is a strong circumstance tending to show that the impact was of such force as would ordinarily be incident to the driving of an automobile at an unusual rate of speed. In this connection, it is to be noted that there is testimony, uncontradicted, that M Street, from Thirty-first to Nineteenth Streets, is "closely built up." [See Stats. 1915, p. 406, sec. 17, as amended by Stats. 1919, p. 214, sec. 11]); 3. That the defendant, in approaching the railroad crossing on a street between Nineteenth and Twentieth Streets drove his car at a greater rate of speed than fifteen miles an hour. (See Stats. 1915, p. 409, sec. 22, as amended by Stats. 1919, sec. 13, p. 220.) As to this latter proposition, the testimony of the watchman at the railroad crossing on M, between Nineteenth and Twentieth Streets, was to the effect that he was attracted to the defendant's car before it reached Twentieth Street because of the rapid speed at which it was traveling and that its speed was not diminished after it crossed said street nor as it was thereafter approaching the railroad tracks and passed over the same.

[1] In the disposition of these appeals, however, consideration of the last-stated proposition may be waived, since there is evidence to support the verdict either upon the theory that the defendant was intoxicated at the time his automobile collided with the deceased and produced the injuries from the effects of which he died, or upon the theory that the speed at which he was going at the time the deceased was struck down was in excess of that limited by the law over a "public highway where the territory contiguous thereto is closely built up." Section 17, as amended by Statutes 1919, page 214, provides:

"No person who is under the influence of intoxicating liquor and no person who is an habitual user of narcotic drugs shall operate or drive a motor or other vehicle on any public highway within this state. Any person violating the provisions of this section shall be punished by imprisonment in the county jail for not less than six months nor more than one year, or by imprisonment in the state prison for not less than one or more than three years or by a fine of

not less than five hundred dollars nor more than five thousand dollars.''

Section 22 of said statute (Stats. 1919, p. 220) provides, *inter alia,* that no person shall operate or drive a motor vehicle or other vehicle on any public highway, where the territory contiguous thereto is closely built up, at a greater rate of speed than twenty miles an hour. There is no provision in the statute expressly prescribing a penalty for the violation of section 22 as to speed limit and, therefore, the operation of a motor vehicle beyond the speed limit under the circumstances defined by the statute is subject to the penalty provided by section 32, subdivision (a), of said statute, as amended by section 16, to the effect that, excepting as in said act otherwise provided or where a different penalty is expressly fixed therein, any person violating any of its provisions ''shall be guilty of a misdemeanor, and upon conviction thereof, unless in this act otherwise provided, shall be punished by a fine not exceeding five hundred dollars or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.''

It will thus be observed that the defendant, while operating his machine on the occasion referred to and at the time he struck the deceased and so caused the injuries from the effects of which he died, committed two different misdemeanors, to wit: 1. Being under the influence of intoxicating liquor while so operating the machine; 2. Driving the machine beyond the prescribed speed limit.

Manslaughter is defined by the Penal Code as ''the unlawful killing of a human being, without malice. It is of two kinds: 1. Voluntary—upon a sudden quarrel or heat of passion; 2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.'' (Sec. 192, Pen. Code.)

[2] It is clear that upon the evidence, tested by the rules of law hereinabove enunciated, the act of the defendant in producing the death of the deceased in the manner above described constituted the crime of involuntary manslaughter upon either of the two theories last above referred to. In other words, the death of the deceased was brought about by the act of the defendant while he was engaged in the

commission of two different misdemeanors or two different unlawful acts, neither of which, nor both taken together, amounted to felony. The court below in effect correctly so instructed the jury.

It requires the citation of no authorities to sustain the conclusion arrived at herein.

The judgment and the order are affirmed.

Finch, P. J., and Plummer, J., concurred.