[Crim. No. 1431. Third Appellate District.—May 8, 1935.]

In the Matter of the Application of LINCOLN V. JOHNSON for a Writ of Habeas Corpus for and on Behalf of TOMLINSON I. MOSELEY.

C. Huntington Jacobs for Petitioner.

George Mordecai, District Attorney, for Respondent.

PLUMMER, J.—On the thirty-first day of January, 1935, a complaint was sworn to before LeRoy E. Bailey, a justice of the peace of the third township of the county of Madera, charging Tomlinson I. Moseley with the crime of speeding, alleged to have been committed as follows: That the said Moseley, on or about the twenty-seventh day of January, 1935, at and in the county of Madera, state of California, did wilfully and unlawfully drive a motor vehicle upon the California state highway, at a rate of speed of approximately 70 miles per hour, whereas the lawful rate of speed at such place and time was 45 miles per hour. Upon his arraignment Moseley entered a plea of guilty and was sentenced to five days in the county jail. The cause is now before us upon a petition for a writ of *habeas corpus,* alleging, among other things, that the complaint does not state any offense or cause of action, and that the justice's court had no jurisdiction. Notwithstanding that the respective counsel have given a great deal of attention to the subject of the jurisdiction of the justice's court, by reason of the views hereinafter expressed, we do not need to give that objection to the proceedings further consideration.

The validity of the proceedings under consideration depends upon the construction that should be given to section 113 of the California Vehicle Act, as amended in 1923, by adding thereto the following provision known as "Subdivision C", to wit: "In all charges for a violation of this section, speeds in excess of those set forth in Subdivision 'b' of this section shall be taken as *prima facie* but not as conclusive evidence of a violation of this section, and every notice to appear, and every complaint charging a violation of this section shall specify approximately the speed at which the defendant is alleged to have driven, and exactly the lawful speed at the time and place of the alleged offense." (Stats. 1923, p. 552, tit. IX.)

Section 113, *supra,* lays down a basis for governing drivers of motor vehicles upon the highway in the following words: "Subdivision 'a': Any person driving a vehicle on the public

highway of this state shall drive the same at a careful and prudent speed, not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person.''

Subject to the provisions and prohibitions set forth in subdivision ''a'', the section then specifies that it shall be lawful to drive at seven different rates of speed, depending upon conditions of the highway set forth in the section. These seven different specifications are all couched in permissive language, and not expressed in a prohibitory form.

Beginning with the act of the legislature approved May 10, 1915 (Stats. 1915, p. 397), section 22 of the act, after setting forth in subdivision ''b'', the provisions now found in subdivision ''a'' of section 113, *supra,* provided: ''That it shall be unlawful to drive at a rate of speed in excess of 30 miles an hour,'' etc., under certain conditions requiring a lesser rate of speed not necessary to be considered herein.

Section 22 of the act approved May 10, 1917, page 382, contained the same prohibitory provisions, making it, in so many words, unlawful to drive in excess of the speeds therein mentioned. Section 22 of the act of the legislature approved May 2, 1919 (Stats. 1919, p. 192), is worded in like prohibitory language, the only change being in the permitted rate of speed.

In 1923, as we have stated, subdivision ''e'' was added to section 113, *supra.* The prohibitory language of subdivision ''b'' was changed to the permissive form, and subdivision ''c'' added, controlling the evidentiary weight of testimony that a vehicle was being operated at a speed in excess of any one of the seven specifications. The language of these subdivisions leads us to the conclusion that the legislature intended, and could only have intended that speeds in excess of those mentioned should not constitute, in and of themselves, substantive offenses. We will repeat a portion of the language of subdivision ''c'', to wit: ''In all charges for a violation of this section, speeds in excess of those set forth in Subdivision 'b' of this section shall be taken as *prima facie* evidence, but not as conclusive evidence of a violation of this section.''
*Prima facie* evidence of what? Not, for instance, that one has

driven in excess of 45 miles per hour, if driving in excess of 45 miles an hour is, in and of itself, a substantive offense. Subdivision "c", to use an historic phrase, becomes absolutely innocuous. It certainly cannot be that the legislature intended to say that a speed in excess of 45 miles an hour is a crime, and then require *prima facie* evidence to make that a crime which has already been declared as such. We think the language means, and the legislature intended that speeds in excess, for instance, of 45 miles an hour, is *prima facie* evidence of a violation of the prohibitory provisions of the section, which are found only in subdivision "a"; that is, a speed in excess of 45 miles an hour, for example, is a greater speed than is prudent, reasonable or proper, having due regard to the traffic, surface and width of the highway, and that such driving upon a public highway, at such speed, is to endanger the life, limb or property of some person.

The section then gives the alleged offending vehicle driver an opportunity to rebut the *prima facie* effect of the excessive speed, and show that none of the prohibitory provisions of the section have been violated. It is illogical to reason that a speed in excess of 45 miles an hour is a substantive offense, and then to permit the alleged offender to come into court and prove, under subdivision "c" that driving in excess of 45 miles an hour is not an offense. There are just two questions involved in a criminal proceeding—guilty, or not guilty; not that an offense has been committed by driving in excess of 45 miles an hour, and then the admission of testimony on the part of the defendant that the legislature incorporated in the subdivision an excuse for committing a crime. Such reasoning, we think, almost convicts the legislature of an absurdity in denominating a certain act a crime and then providing that the person accused of committing the crime may, without showing that he has not committed any crime, offer an excuse for committing the very crime with which he is charged. In this particular we are aided by the definition of the words *"prima facie"* found in 49 C. J., page 1346, to wit: "As it first appears; at first sight; at first view; on its face; on the face of it; on the first appearance"; etc. Thus, driving at a speed in excess, say, of 45 miles per hour, on the face of it appears to be violating some one of the prohibitory provisions set forth in subdivision "a" of section 113,

*supra;* not, on the face of it, that the vehicle is being driven in excess of 45 miles per hour; that is unquestioned; taken for granted. The highway patrolman, on the face of it, is justified in apprehending the vehicle driver and charging him with having violated some one of the provisions of the prohibitory portion of the section; not with his going, on the face of it, over 45 miles per hour. The person apprehended, if he desires to contest the charge, has his day in court and the opportunity to refute the same, and show that a speed in excess of 45 miles an hour, at a time and place where the vehicle is being so driven, does not violate any of the prohibitory provisions of the section. Thus, the *prima facie* rule protects the officer in giving a citation, and afterwards, in filing a complaint, but it does not change the fact that the court must determine from the testimony, if any is offered, as to whether the offending driver has or has not violated some one of the prohibitory provisions found in subdivision "a" of section 113, *supra.* In the first instance the officer has the advantage of the *prima facie* rule; that is, on the face of it it appears that an offense has been committed by driving in a manner prohibited by subdivision "a", *supra.* As against this *prima facie* showing, the driver of the vehicle may introduce testimony sufficient to convince the court that the speed was proper, having regard for the traffic, surface, and width of the highway, and that the speed at which he was driving did not endanger the life, limb or property of any person.

In this connection we may state that there is both an actual and a potential hazard involved in the driving of a motor vehicle, and that the court before which an action is tried may take both the actual and potential hazard into consideration. For illustration, we state the following: Where the highway is wide and smooth, not being used by other vehicles, and there are no intersections toward which the vehicle is being driven, the testimony might convince the court, taking into consideration these facts, that none of the provisions of subdivision "a", *supra,* were being violated. On the other hand, if a vehicle is approaching an intersection, and the speed is such that immediate control may not be had to avoid a collision with a vehicle using the intersecting highway, the court might very well conclude that the provisions of subdi-

vision "a" were being violated. This rule, we think, would apply whether there was or was not a vehicle approaching the intersecting highway. There is not only a possibility, but there is always a probability that intersecting highways will be used, which presents at all times a potential hazard if the intersecting highway is being approached at an excessive speed.

Our views as hereinbefore set forth are reinforced by a consideration of the language found in subdivision "d" of section 113, *supra*. Prior to the addition of this subdivision by the legislature in 1931, in all civil cases a speed in excess, say, of 45 miles per hour was held negligence *per se;* that is, negligence as a matter of law. Such is no longer the case. It is now a question of fact to be determined like any other fact, as to whether the alleged speed does or does not constitute negligent driving, and the burden of proving negligence is placed upon the party making the allegation.

Again, subdivision "a", *supra,* calls for further elucidation. The seven different speeds set forth in the section are all made subject to the provisions of subdivision "a". Irrespective of the opinion of the legislature as expressed in subdivision "b", that ordinarily the designated speeds would not constitute a violation of any of the provisions of subdivision "a", *supra,* there are many instances which may be cited which would not conform with the prohibitory provisions set forth therein. It need hardly be said that driving at 45 miles per hour on an open highway, on a foggy morning when the driver's vision is obstructed so that he cannot perceive objects which may be only a few rods away, would constitute endangering life, limb and property, and also would be in absolute disregard of the rights of others intended to be safeguarded by the provisions of subdivision "a", *supra;* likewise, driving at 45 miles per hour when one is blinded by the sun or other glaring lights. To support this statement we have only to cite the case of *Havens* v. *Loebel,* 103 Cal. App. 209 [284 Pac. 676].

The changing provisions by the legislature relative to vehicular traffic which we have cited leads us to the conclusion that the legislature has had in mind the hardships relating to a maximum speed, and the dangers of unlimited speed, the changed conditions of the highway, the vast improvements

made in the construction thereof, and likewise, the continued improvements made in automobiles and the added control now given to the driver of a motor vehicle which did not exist in the early history of the motor vehicle industry has necessitated the adoption of what we may call a "middle-of-the-road" rule; that is, the legislature has not adopted, under all conditions, a maximum speed limit, nor has it, considering the hazards which would be presented, done away with the speed limit, but has, by its various enactments, provided for a method of safeguarding the highway just as we have set forth herein. Thus, in all cases where a driver exceeds any one of the particular seven specifications set forth in subdivision "b" of section 113, *supra*, the burden is cast upon him to show that he has not violated any of the prohibitory provisions of subdivision "a", section 113, *supra*. If he cannot do so, following the *prima facie* effect given to the testimony by subdivision "c" of the section, conviction should follow.

We are satisfied from a consideration of section 113, *supra*, that all of the seven provisions set forth in subdivision "b" of the section, stand upon the same footing, are subject to the provisions found in subdivision "a", and also controlled by the language found in subdivision "c", *supra*.

As stated in the beginning of this opinion, the question of jurisdiction of the justice of the peace of the third township in the county of Madera before this proceeding was had need not be determined, we think it necessarily follows from what we have said that the mere charging of one with speeding does not accuse one of any crime, and a plea of guilty thereto is of course a nullity. Without setting forth what we think would constitute a sufficiently formal complaint, the complaint must allege a violation of some one of the provisions of subdivision "a" of section 113, *supra*. The complaint in this action does not do so.

The writ is granted. The person in behalf of whom the petition was filed is discharged and his bail exonerated.

Thompson, J., and Pullen, P. J., concurred.