[Crim. No. 3305. Second Appellate District, Division One.—March 11, 1940.]

THE PEOPLE, Respondent, v. PATRICK O'BRIEN, Appellant.

A. Brigham Rose for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellant was found guilty by the court sitting without a jury of a violation of subdivision 2, section 337a, of the Penal Code, in that he kept and occupied an apartment for the purpose of recording and registering bets on horse races.

This appeal is prosecuted from the judgment of conviction and from the order denying a motion for a new trial upon the grounds: (1) That the evidence is insufficient to sustain said judgment; (2) that the trial court "essayed to usurp the functions of an appellate tribunal" which was evidenced by its declaration to the following effect: "When you submit a case on the (preliminary) transcript, you are submitting it to the same effect that a transcript would be submitted to an appellate court. In other words, the question of credibility is out and the sole question is as to whether there can be gleaned from the transcript sufficient evidence to warrant an ultimate conclusion of guilt."

By stipulation the cause was submitted upon the transcript of evidence adduced at the preliminary hearing which consisted solely of the testimony of one of the arresting officers, Edgar A. Like. This evidence disclosed that said officer arrested "the defendants" about 2:15 in the afternoon of August 8, 1939, in an apartment containing three rooms located on an upper floor of an apartment house on North Vine Street in the city of Los Angeles; that the only person present in the front room of the apartment when said officer entered the place was a man named James Houghton, who was sitting before a table upon which some run-down sheets were spread out. Other betting paraphernalia, i. e., A. B. C. betting markers and inventories of the day's business were introduced in evidence, the function of which with respect to bookmaking was explained by said Officer Like. In this connection, he testified that he checked the entries on the betting markers against the overnight run-down sheets, and "found that all of the numbers on the betting markers were numbers of horses running on this particular date". He also testified that there were three telephones in the apartment (two alive and one

dead), as well as a teleflash which was on the table before which defendant Houghton was sitting with a telephone receiver in his hand; that he did not see Houghton write on any of the papers and did not hear him say anything; that officer Morgan brought the "two defendants, Conterno and Louis" into the room and that the two officers then "questioned all four of them in there and continued our search and then took them down to the station". The witness Like was then interrogated as follows: "Now have you told the court everything you saw or heard any of these three defendants do before they were placed under arrest? A. I believe I have. Q. Well, after you put the defendants under arrest did you have a conversation with the defendant Houghton? A. No, sir, officer Morgan questioned all of the defendants."

Upon cross-examination Officer Like stated that he and Officer Morgan entered the apartment with a Chinese pass key and found only one person in the apartment seated at the table. He was then asked, "How long were you in that apartment with Houghton before the other men were brought in? A. Approximately five minutes. Q. How long did you remain in the apartment? A. Approximately fifteen or twenty minutes, I should say. Q. And the men were standing and seated? A. They were. . . . Q. And did you handcuff them before you left the apartment? A. We did not handcuff them at all. Q. You walked out with them? A. That is right. Q. And just before you walked out you found this key under the couch, didn't you? A. I saw the defendant, James Houghton, drop it there. Q. And you saw him drop it there when? A. When I told him to sit down on the couch. . . . Q. When did you tell him to sit down on the couch? A. When the phone rang and he picked up the phone and I told him to sit down and let it alone. Q. And it was done there in the presence of all the other defendants? A. That is right, and I saw him drop it before they came in. Q. But you didn't pick it up immediately? A. No, sir, I was busy at the time. Q. Where were you seated or standing at the time you saw these keys drop? A. There was a folding bed that opens out, and it was up. There are two doors and I was standing behind one of the doors writing the information that I heard over the teleflash down on my note book, and I was watching the defendant at the time." Presumably,

the witness here refers to the defendant Houghton, whom he said he had been watching ever since he saw him drop the key.

On redirect examination, the witness was questioned as follows: "Q. Was the teleflash in operation at the time when you first entered the room? A. It was. I wrote down a whole lot that it said. Q. What did you hear in that respect? . . . A. When we first entered the room where the defendant Houghton was sitting, the teleflash said, 'They are at the gate at Thistle Down.'" At this point, the witness narrated at length what he had heard coming over the teleflash.

After this, said witness was again cross-examined as follows: "Q. All the time you were listening to this the defendant O'Brien was there alone, is that right? A. That is right. Q. You and he were there alone? A. That is true. *Mr. Kenney:* Move that it be stricken as not admissible as to the other defendants. *The Court:* Motion to strike granted. *Mr. Kenney:* That is all." Whereupon the testimony of the officer as to what he had heard over the teleflash was stricken as not being admissible as to the defendants, other than O'Brien.

Except for this last above quoted testimony, the name of appellant O'Brien nowhere appears in the transcript of the preliminary hearing. Even the attorney-general in his brief makes the statement: "We believe it may be conceded that there is no testimony in the transcript which connects the appellant O'Brien with any of the activities in the apartment except the question propounded to the officer by the defense counsel above quoted."

There appeared to be no doubt in the officer's mind that he saw James Houghton alone in the apartment when he first entered, and that said Houghton was sitting at a table upon which were spread out certain bookmaking paraphernalia, consisting of various papers, telephones and a teleflash; that he saw said Houghton drop a key and thereafter, while listening to the race returns coming over the teleflash, he kept Houghton in sight. The record is silent with respect to the part played by appellant O'Brien at the time and place in question, his name and those of defendants Conterno and Louis having been mentioned but once in the testimony of Officer Like, which, as hereinbefore stated, is the only evidence presented in the cause herein. There is not the slightest inti-

mation in the record before this court that defendant James Houghton and the appellant O'Brien are one and the same person, although the trial court in a colloquy with defense counsel at the close of the trial made the following comment: "I think the transcript shows sufficient evidence to sustain the prosecution. . . . Presence and the— . . . fact he was using the telephone, and the fact he had a key to the place." The record does not bear this out. Appellant undoubtedly was present, but there is no evidence that he was either using the telephone or had a key to the apartment.

What was said by this court in the opinion in *People* v. *Fisk,* 32 Cal. App. (2d) 26, 30 [89 Pac. (2d) 142], is particularly applicable to the facts in the instant cause: "There is a great difference between the legal requirements with regard to what evidence is necessary to justify the order of a magistrate in holding a defendant to answer in the superior court, and that which is necessary to support a judgment of 'Guilty'. The doctrine of reasonable doubt applies to the latter, whereas but slight evidence is sufficient to justify the former. To be accused of, and placed on trial for, a felony manifestly cannot be regarded as a trivial matter, and the perfunctory disposition of such an action can scarcely be said to be in accord with that form usually followed and recognized in connection with the administration of justice. Nor can the conviction of a felony be judicially regarded as a mere experience of no consequence in the ordinary course of events."

The evidence adduced as to appellant O'Brien does nothing more than raise a mere suspicion of guilt, and is totally insufficient to sustain the judgment of conviction. In view of such conclusion, it is deemed unnecessary to pass upon appellant's second point.

The judgment and order appealed from are, and each of them is, reversed.

Doran, J., and White, J., concurred.