[Crim. No. 3655.   Second Dist., Div. Two.   Feb. 1, 1943.]

THE PEOPLE, Respondent, v. HOWARD A. MOONEY, Appellant.

A. H. McConnell for Appellant.

(1)

Earl Warren, Attorney General, Burdette J. Daniels, Deputy Attorney General, John F. Dockweiler, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

MOORE, P. J.—Having been accused by information of permitting the storeroom and premises of 227 East Fourth Street, Long Beach, to be used and occupied by one Seavers who there conducted bookmaking (§ 337a, subd. 5, Pen. Code) appellant was convicted by a jury. After his motion for a new trial had been denied he was sentenced to imprisonment for a term of six months in the county jail. The appeal is taken from both the judgment and the order denying his motion for a new trial.

■ The only issue presented to this court is as to the sufficiency of the evidence to support the judgment. Inasmuch as appellant admits that his agent while occupying the storeroom did engage "in bookmaking activities as set forth in the information" the issue is further narrowed to the inquiry as to whether such activities of Seavers during his management of the store were known to appellant.

The pertinent provisions of the statute which appellant is accused of violating are as follows:

"Every person . . . (5) who, being the . . . lessee or occupant of any room, . . . building . . . or any part thereof, whether for gain, hire, reward, or gratuitously, or otherwise, permits the same to be used or occupied for any purpose, or in any manner prohibited by subdivisions 1, 2, 3, 4, of this section; . . . is punishable by imprisonment in the county jail or state prison for a period of not less than thirty days and not exceeding one year.

"This section shall apply not only to persons who may commit any of the acts designated in subdivisions 1 to 6 inclusive of this section, as a business or occupation, but shall also apply to every person or persons who may do in a single instance any one of the acts specified in said subdivisions 1 to 6 inclusive."

The premises were leased to appellant by one Thurston on or about the 11th day of February, 1942, to be used "as a storeroom for cigars and news stand." The lease was for the term of two and one-half months at $45 per month, $90 of which was paid in advance as appellant commenced his

occupancy. Prior to his entering the Fourth Street building appellant had known Seavers for about five years. They had operated a cigar store at 127 W. Sixth Street from December, 1940, to the time of their removal to the new location. Appellant testified that upon occupying the Thurston premises he "made arrangements with Seavers to manage the cigar store and news stand" for 50 per cent of the profits from the sales of merchandise and from the operation of the pin ball machine; that the profits from the sales were divided weekly; that the profits from the pin ball machine were divided every second day; that sometimes Seavers brought the money to appellant's home. Not more than $50 worth of merchandise was kept in the establishment. Although the two men had done a very good business at their Sixth Street stand, at the new place on Fourth Street there was very little travel and they made fewer sales. Because of the light business done on Fourth Street, Seavers testified that he "had to make some money somewhere." Being an experienced bookmaker his opportunity was at hand and he embraced it eagerly. He kept scratch sheets and racing forms in the store which were daily observed by appellant. Each day two or three men regularly assembled there and they discussed racing horses with Seavers. A radio blared forth the results of the various race tracks. During the period of police observation, from February 16 to February 26, 1942, appellant admitted his knowledge *for some time* that Seavers "bet on and played the horses." Police officer Sullivan visited the store daily during the period of his watchful waiting and shadowing of Seavers and appellant. He testified that, on each of the eleven days appellant visited the store, he always came in just before or just after the races. Officer Wiggins witnessed appellant's visit to the store on February 19 when other customers were present. He remained in the store about forty minutes during which appellant was in front of the cigar counter. On that occasion, as Mooney was leaving, he told Seavers to admonish all patrons who might desire to bet on the horses that police officers were in the building. On the 20th of February Wiggins heard appellant tell Seavers that he should permit no one to use the telephone; that it was for business purposes only. The officer testified that the store closed shortly after four o'clock each day when Seavers went directly to the home of appellant.

Seavers testified that he told appellant that he thought business would possibly pick up and that "as long as I had bookmaking customers I did all right, and, if he did not kick, I should worry."

From the facts disclosed by the foregoing a disinterested jury was warranted in finding that appellant had knowledge of the bookmaking activities of Seavers. His stand was located where there was little traffic. He invested only a modicum of capital. He employed Seavers as his manager on a profit sharing basis. It is inconceivable that he ever thought that 50 per cent of the profits from sales and from the pin-ball machine would furnish a subsistence to Seavers, to say nothing of paying one-half of the rent and operating expenses. It is incredible that any intelligent person could have believed that two men could engage in such enterprise upon so slight a capital, in such a location and expect to earn sufficient income from legitimate operations to justify a visit by Seavers to the home of appellant each day or every other day for the purpose of effecting a settlement of the accounts between them. Since appellant knew that Seavers engaged in betting on the horse races and saw the scratch sheets and racing forms on the counter on the occasion of his daily visits he could not have failed to be cognizant of the bookie operations of his manager. This inference is further fortified by the fact of the prompt visits of Seavers to appellant's home to divide the day's profits about four o'clock in the afternoons. What could account for such strange behavior under the circumstances other than illicit transactions which the two men wished to conceal from the minions of the law? To maintain such an establishment required the payment not only of rentals but for lights, telephones, utilities and incidental expenses incurred in the conduct of the place. No thoughtful person can believe that appellant would have created such a position for Seavers to carry on his sport of betting on horse races without a knowledge that his manager was accepting bets on races as a source for additional income.

The authorities cited by appellant (*People* v. *O'Brien,* 37 Cal.App. 2d 708 [100 P.2d 367] ; *People* v. *Fisk,* 32 Cal.App. 2d 26 [89 P.2d 142] ; *People* v. *Yoder,* 35 Cal.App.2d 347 [95 P.2d 470] ; *People* v. *Rabalete,* 28 Cal.App.2d 480 [82 P.2d 707]) are unavailing. It is now the law that the determination as to whether the evidence presented is suffi-

cient to support the judgment of conviction must depend upon the circumstances of each case. (*People* v. *Newland,* 15 Cal.2d 678, 685 [104 P.2d 778].) The jury as triers of the facts are permitted to make a finding of the ultimate facts established by the evidence and from inferences reasonably to be drawn from such facts. In the Newland case the court specifically disapproved of the cases cited by appellant insofar as they were inconsistent with the views expressed in that decision. Upon a review of the record as a whole we cannot say that sufficient facts could not have been found from the evidence to warrant the inference of guilt. (*People* v. *Newland, supra; People* v. *Caldwell,* 55 Cal.App. 2d 238 [130 P.2d 495].)

The judgment and the order denying a new trial are affirmed.

Wood (W. J.) J., and McComb, J., concurred.