[Crim. No. 4648. In Bank. Feb. 15, 1946.]

THE PEOPLE, Appellant, v. BART MITCHELL, Respondent.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Thomas Whelan, District Attorney, and Eugene R. Dukette, Deputy District Attorney, for Appellant.

Edgar B. Hervey and Henry F. Walker for Respondent.

TRAYNOR, J.—Defendant was charged by information with involuntary manslaughter alleged to have been com-

mitted in violation of subdivision 2 of section 192 of the Penal Code. The superior court on motion of defendant entered an order dismissing the information on the ground that the evidence before the committing magistrate was insufficient to justify holding the defendant for trial. The People appeal.

The record on appeal does not include the reporter's transcript of the evidence at the preliminary examination. The reporter's transcript of the proceedings in the superior court, however, includes a summary by counsel for defendant of the evidence taken at the preliminary examination, which counsel for the prosecution agreed was a fair and complete summary of all the evidence before the committing magistrate. This summary was given by counsel for defendant in presenting his motion to enable the court to pass on the sufficiency of the evidence at the preliminary examination. Defendant has no cause to complain if his counsel's summary is used by this court for the same purpose.

On October 30, 1944, at about six o'clock in the evening, defendant drove his car in a southerly direction on Park Boulevard and Twelfth Avenue in San Diego. An accident occurred on Twelfth Avenue near the intersection of Park Boulevard and Russ Street. The part of Park Boulevard involved herein runs in a general northerly and southerly direction across Balboa Park. As it approaches the main buildings of the United States Naval Hospital from the north it makes a broad curve to the west, returns into a slight curve to the east, and joins the north end of Twelfth Avenue at Russ Street. Commencing near the hospital the grade of Park Boulevard descends to the south. A streetcar track runs along the east side of the boulevard, crosses Russ Street, and proceeds south on Twelfth Avenue. Both Park Boulevard and Twelfth Avenue are main thoroughfares and at times carry considerable vehicular traffic. There is a 25-mile an hour speed limit sign on the west side of Park Boulevard about 180 feet north of the north line of Russ Street.

The evidence as summarized by defendant's counsel shows that defendant drove his automobile downgrade on Park Boulevard at such a high rate of speed that when he came upon a streetcar that had stopped south of Russ Street to take on and discharge passengers, he could not stop his automobile behind the streetcar. He swerved to the left to avoid hitting passengers and collided with the left rear corner of the streetcar thereby losing control of his automobile. The automobile came to rest against a trolley-line-support pole,

which was broken by the impact. A police officer who arrived at the scene after the accident gave a description of his findings, quoted by counsel as follows: "He says this: 'The rear of the street car at the point contact was made between the car and the street car, was approximately eighty-one feet south of the south line of Russ. Prior to this point running up to the end of the street car was approximately twenty-seven feet of centrifugal skid'—showing an application of the brakes about twenty-seven feet before the collision—'leading from the point of impact to where the car was setting was approximately fifty-one feet of centrifugal skid.' In other words, there was a skid mark fifty-one feet after the contact with the street car and twenty-seven feet before. At the point where the car was resting, a support pole which supports the trolley lines for the street car, was broken off at the base. Also an ornamental light standard which was along side the support pole, was badly damaged." Two United States Navy Waves who were walking west on Russ Street observed the accident. One testified concerning the speed of the automobile: "We thought it was going very rapidly, and in my opinion about seventy." The other testified that it was travelling "very fast" that when she first saw the automobile "it was going around a curve," and that "as it turned to its left coming around the curve . . . it was on two wheels . . . the right front and the right rear wheels, and . . . the other wheels were in the air." Harvey Anderson, who was riding with defendant, died of injuries received in the accident.

The question presented at the outset is whether the superior court was justified in holding that there was not sufficient cause to believe the defendant guilty of the offense charged. In a preliminary examination it is not necessary that a defendant be proved guilty beyond a reasonable doubt. "Reasonable or probable cause," required to uphold the commitment of a defendant (Pen. Code, § 995), exists if there is sufficient proof to make it reasonable to believe that the defendant is guilty of the offense charged. (Pen. Code, § 872; *People* v. *Tallman, ante,* pp. 209, 212 [163 P.2d 857] ; *People* v. *O'Brien,* 37 Cal.App.2d 708, 712 [100 P.2d 367]; *People* v. *Fisk,* 32 Cal.App.2d 26, 30 [89 P.2d 142]; *People* v. *Novell,* 54 Cal. App.2d 621, 623 [129 P.2d 453].)

Subdivision 2 of section 192 of the Penal Code as it read

at the time of the alleged offense* defined involuntary manslaughter as ''the unlawful killing of a human being, without malice . . . in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.''

The accident occurred after defendant had passed a sign declaring the speed limit in that district to be 25 miles an hour. The evidence shows without conflict that his speed was not only in excess of this limit, which is prescribed for residential or business districts where signs are in place giving notice thereof, but in excess of the 55-mile an hour limit, which applies unless a different speed limit is established. (Veh. Code, § 511.) It must therefore be determined whether there was reasonable cause to believe that defendant was committing an unlawful act or was committing a lawful act in an unlawful manner within the meaning of section 192 of the Penal Code. Section 510 of the Vehicle Code, the violation of which is a misdemeanor under section 763 of the code (*In re Johnson*, 6 Cal.App.2d 654, 656 [45 P.2d 241]; *People* v. *Banat*, 39 Cal.App.2d Supp. 765, 768 [100 P.2d 374]; see *Knox* v. *Pryor*, 10 Cal.App.2d 76, 78 [51 P.2d

---

*Section 192 was amended in 1945 to read as follows:

''Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds:

''1. Voluntary—upon a sudden quarrel or heat of passion.

''2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

''3. In the driving of a vehicle—

''(a) In the commission of an unlawful act, not amounting to felony, with gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.

''(b) In the commission of an unlawful act, not amounting to felony, without gross negligence; or in the commission of a lawful act which might produce death, in an unlawful manner, but without gross negligence.

''This section shall not be construed as making any homicide in the driving of a vehicle punishable which is not a proximate result of the commission of an unlawful act, not amounting to felony, or of the commission of a lawful act which might produce death in an unlawful manner.''

Since the Legislature has not expressly declared that violations of the section as it formerly read shall not be prosecuted thereunder, the section as it read at the time of the commission of the offense is to be applied. (Gov. Code, § 9608; *Sekt* v. *Justices Court*, 26 Cal.2d 297, 300 [159 P.2d 17]; see 4 Cal.Jur. 10-Yr.Supp. 546.)

106]), provides that "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." A prima facie case of violation of this section arises if the speed of a vehicle exceeds the limits prescribed in section 511 "unless the defendant establishes by competent evidence that any said speed in excess of said limits did not constitute a violation of the basic rule declared in Section 510 hereof at the time, place, and under the conditions then existing." Defendant has shown no circumstances explaining why his speed did not constitute a violation of the basic rule declared in section 510.

In some jurisdictions it has been held that the commission of a misdemeanor is not an unlawful act within the meaning of involuntary manslaughter statutes like section 192 of the Penal Code, if the punishable act is malum prohibitum rather than malum in se. (See 40 C.J.S. 923; 5 Am.Jur. 925.) It is generally recognized, however, that the violation of speed regulations is an unlawful act within the meaning of such statutes. Thus in *State* v. *McIver,* 175 N.C. 761, 766 [94 S.E. 682], the court referred to the distinction between malum in se and malum prohibitum, stating: "It is, however, practically agreed, without regard to this distinction, that if the act is a violation of a statute intended and designed to prevent injury to the person, and is in itself dangerous, and death ensues, that the person violating the statute is guilty of manslaughter at least. . . ." (*Commonwealth* v. *Samson,* 130 Pa.Sup.Ct. 65 [196 A. 564]; see 40 C.J.S. 924; 29 C.J. 1153; 1 Wharton, Criminal Law 12th ed. § 157, note 10.)

 In this state it is settled that a person commits an unlawful act within the meaning of section 192 if he violates speed laws designed to prevent injury to the person, and that he is guilty of involuntary manslaughter if death is caused thereby. (*People* v. *Wilson,* 193 Cal. 512, 516 [226 P. 5]; *People* v. *Collins,* 195 Cal. 325, 348 [233 P. 97]; *People* v. *Seiler,* 57 Cal.App. 195, 199 [207 P. 396]; *People* v. *Cunningham,* 64 Cal.App. 12, 20 [220 P. 312]; *People* v. *Kelly,* 70 Cal.App. 519, 523 [234 P. 110]; *People* v. *Von Eckartsberg,* 133 Cal.App. 1, 5 [23 P.2d 819]; see *People* v. *McIntyre,* 213 Cal. 50, 55-56 [1 P.2d 443]; 16 A.L.R. 914; 59 A.L.R. 695; 99 A.L.R. 756; 42 C.J. 1355.) From the evidence before the committing magistrate in the present case it would

be reasonable to conclude that defendant drove his automobile not only in violation of such laws but in reckless disregard for the safety of others. The committing magistrate was therefore fully justified in holding defendant to answer in the superior court.

Defendant contends that at the time of the accident, the killing of a person by negligent operation of an automobile was not punishable as involuntary manslaughter. In 1941 section 500 of the Vehicle Code was amended to read as follows: "When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle with reckless disregard of, or wilful indifference to, the safety of others, the person so operating such vehicle shall be guilty of negligent homicide, a felony, and upon conviction thereof shall be punished by imprisonment in the county jain for not more than one year or in the State prison for not more than three years. Hereafter, the provisions of the Penal Code, defining involuntary manslaughter, shall not apply to homicide caused by the driving of any vehicle." (Stats. 1941, p. 1414.) The sentence last quoted prevented dual liability under section 500 of the Vehicle Code and section 192 of the Penal Code for the same conduct. (See *People* v. *Amick*, 20 Cal.2d 247 [125 P.2d 25].)

In 1943 the Legislature adopted an "act to amend Section 193 of the Penal Code and to repeal Section 500 of the Vehicle Code, relating to crimes involving the operation of vehicles." (Stats. 1943, p. 1959.) Defendant argues that the latter act, by repealing section 500 of the Vehicle Code, removed any criminal liability for causing the death of another by negligent operation of a motor vehicle. He contends that sections 192 and 193 of the Penal Code were repealed by the 1941 amendment to section 500 of the Vehicle Code insofar as they applied to homicide caused by the driving of a vehicle, and that it was necessary to provide expressly for their revival to make them again applicable to such homicide. Defendant relies on the provision in section 9607 of the Government Code that "No statute or part of a statute, repealed by another statute, is revived by the repeal of the repealing statute without express words reviving such repealed statute or part of a statute." The 1941 amendment to section 500 of the Vehicle Code, however, did not repeal sections 192 and 193 of the Penal Code. It left those sections in force but excepted from their operation homicide caused by the driving of a vehicle. When the exception was taken

away, these sections were then to be applied without the exception. (*People* v. *Ely,* 71 Cal.App.2d 729 [163 P.2d 453].) "The rule of law applicable to this situation is well stated as follows: 'The statutory rule against the revival of a statute by the repeal of a repealing act relates to absolute repeals, and not to cases where a statute is left in force and all that is done in the way of repeal is to except certain cases from its operation. In such cases the statute does not need to be revived, for it remains in force, and the exception being taken away, the statute is afterwards to be applied without the exception; . . .' (25 R.C.L. 934)." (*County of Ventura* v. *Barry,* 202 Cal. 550, 554 [262 P. 1081].) Moreover, the statute repealing section 500 of the Vehicle Code showed clearly that the Legislature intended sections 192 and 193 to apply thereafter to homicide caused by the driving of a vehicle, for it provided that section 193 of the Penal Code be amended to read: "Manslaughter is punishable by imprisonment in the State Prison for not exceeding 10 years, except that a violation of subdivision 2 of Section 192 of this code resulting from the operation of a vehicle is punishable by imprisonment in the county jail for not more than one year or in the State Prison for not more than five years." The special limitation upon the punishment of one who commits involuntary manslaughter in the operation of a vehicle would be meaningless if the Legislature had not intended to make such a person punishable for involuntary manslaughter.

Defendant contends that this appeal should be dismissed because of the failure of the People to take an exception to the trial court's order granting defendant's motion to dismiss the information. Defendant's theory is that section 1259 of the Penal Code provides that a defendant may have a ruling reviewed on appeal without taking an exception therefrom, but that no comparable provision gives such privilege to the People. He concludes, therefore, that the People cannot review any ruling on appeal unless a formal exception has been noted in the trial court. This argument is based upon a misconception of the function of the exception and the nature of appellate jurisdiction.

The exception is a formal protest against a ruling of the court, which was of considerable importance when the record consisted of a bill of exceptions. Its purpose was to "cause the question of law, which was presented to and decided by the Court, to be made a matter of record, so that

it may be re-examined by the Court on motion for a new trial, or be reviewed by the appellate Court." (*Smith* v. *Lawrence,* 38 Cal. 24, 27 [99 Am.Dec. 344] ; see 3 Am.Jur. 47.) The widespread use of the reporter's transcript as the record on appeal and the modernization of the bill of exceptions into a narrative statement of the proceedings (see Rules on Appeal, rule 7), have resulted in the practical disappearance of the formal exception in appellate procedure in this state. The fact that in criminal cases the record must be a reporter's transcript, unless it is unobtainable (rules 33, 36), is further evidence that the exception in criminal cases is obsolete.

 Irrespective of these considerations, however, there is no force to the contention that an appeal may be dismissed for failure to take an exception to the order or judgment appealed from. Exceptions, if required, are taken from intermediate rulings in the course of a proceeding to enable the aggrieved party to have such rulings reviewed on his appeal. The scope of review on appeal is entirely different from jurisdiction of the appeal. When a judgment or order is appealable, as is the order dismissing an information in this case (Pen. Code, § 1238), appellate jurisdiction attaches upon the proper and timely filing of a notice of appeal. Thereafter, if a record on appeal is filed, the appellate court must determine the matter on the merits. If any ruling in the court below was not the subject of a proper objection by the appellant, the appellate court may deem the error waived and decide against the appellant on the merits; but it cannot dismiss an appeal because the appellant has, by failure to make such proper objection, limited the scope of review.

Stated briefly, there is no more purpose in taking an exception to an appealable order than there is in taking an exception to a final judgment. The exception is only a formal type of objection, and there is no more formal type of objection known to the law than a notice of appeal from an appealable order or judgment. (*Smith* v. *Lawrence,* 38 Cal. 24, 27 [99 Am.Dec. 344] ; *Denver County Commrs.* v. *Home Savings Bank,* 236 U.S. 101, 104 [35 S.Ct. 265, 59 L.Ed. 485] ; *United States* v. *La Franca,* 282 U.S. 568, 570 [51 S.Ct. 278, 75 L.Ed. 551] ; see 3 Am.Jur. 47 ; 4 C.J.S. 662.)

The order dismissing the information is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.