JENNIE MAY STEPHENS, Appellee, v. FORREST S. TREAT, Superintendent Iowa Soldiers' Orphans' Home, Appellant.

INFANTS: Custody—Adjudication of Neglect and Dependency—Effect. The due commitment of a child to a proper state institution on a legal adjudication that the child is "neglected and dependent" permanently deprives the parent of all right to the custody or control of said child.

Headnote 1: 31 C. J. p. 1112 (Anno.)

Headnote 1: 14 R. C. L. 273–275; 20 R. C. L. 599.

*Appeal from Scott District Court.*—W. R. MAINES, Judge.

JUNE 21, 1926.

REHEARING DENIED DECEMBER 16, 1926.

Action in habeas corpus, to recover the custody of a child which had been legally committed to the Iowa Soldiers' Orphans' Home. The court ordered that the defendant deliver said child to its mother, the relator. The facts appear in the opinion.—*Reversed.*

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *John Weir,* County Attorney, for appellant.

*John C. Higgins,* for appellee.

FAVILLE, J.—The cause is submitted upon a stipulation of facts. The parents of appellee were married at Estherville, Iowa, in 1915. Four children were born to them. At the time of the trial, the eldest was nine years of age, and appellee, the

youngest, was four years of age. In April, 1922, the husband was granted a divorce from his wife, on the charge of adultery and cruel and inhuman treatment. The four minor children were, by the decree, given to the temporary custody of the mother "until further disposition is made of them." A few weeks later, a modification of the decree was entered, and the custody of the three older children was then granted to the husband. No additional order was made in respect to appellee. It appears that the mother went to the University Hospital at Iowa City for treatment; and in August, 1922, proceedings were instituted in the juvenile division of the district court of Emmet County, in which it was alleged that one of the children, the custody of whom had been granted to the father, and another child, appellee herein, were dependent and neglected children. The court entered an order and decree finding that said minors were each under the age of sixteen years, and that they were dependent and neglected children, and ordered that they be committed to the state juvenile home at Toledo. A mittimus was duly issued, requiring that said children be taken to the said state juvenile home at Toledo, Iowa, and be confined therein. Thereafter, on or about the 29th of August, 1922, the board of control of state institutions adopted a resolution reciting that, whereas it appeared that said children were both under four years of age, and that no child under said age can be received as an inmate of the state juvenile home at Toledo, it was therefore ordered that the said children be transferred to the Iowa Soldiers' Orphans' Home at Davenport, Iowa. Thereupon they were so transferred, and placed in the custody of appellant, as superintendent of the said Iowa Soldiers' Orphans' Home.

On the 20th day of December, 1923, appellant, as superintendent of the said Iowa Soldiers' Orphans' Home, entered into a written contract with certain parties whose names are undisclosed in the record in this cause, for the care and custody of said child. Said contract is referred to as a "placement" contract. A copy of said contract, with the exception of the signatures thereto, was offered in evidence in said cause, and is as follows:

"Articles of Agreement: Made and entered into this 20th day of December, A. D., 1923, between F. S. Treat as superintendent of the Iowa Soldiers Orphans Home at Davenport, Iowa,

party of the first part, and ........................ and ........................
husband and wife of ........................ county of ........................ and
state of Iowa, party of the second part, subject to the approval
of the board of control of state institutions of Iowa.

"Witnesseth: That the party of the first part has placed
in the care, custody and control of the party of the second part,
at home in ........................ to be trained, loved and educated, so
as to be fitted for the ordinary requirements of life, Jane
Stephens No. 4223, who was born on the 14th day of September,
A. D., 1921, and has been an inmate of said Soldiers' Orphans'
Home.

"The party of the first part agrees that he will leave said
child in the care of the party of the second part, so long as
they shall love, cherish, nurture, educate and properly care
for said child in a suitable and Christian manner as they would
be required to do were it their own child. And the second party
hereby acknowledge the receipt of said child, and agree on their
part that they will faithfully perform and keep the conditions
named above, both in letter and spirit.

"And the second party further agrees that they will send
said child to school at least 9 months each year until said child
is 16 years of age, unless prevented by sickness or other neces-
sary considerations; and will see that said child has church
privileges and proper companionship in every respect as they
would their own child. * * * And said party of the second part
further agrees that when the child shall have attained the age
of 21 years, they will give it five hundred dollars, in lawful
money, or if it leave permanently before the end of the full
term herein provided for, a pro-rata share of that amount for the
time said child remains in their family after the age of fourteen
years, together with at least two good and sufficient suits of
clothing throughout to said child and will allow the said child
after she becomes 21 years of age to go to and from their home,
and enjoy said home as freely and fully as though it was their
own child.

"Provided, however, that Jane Stephens No. 4223, the
above named child shall prove herself reasonably faithful and
shall not leave their home or employ of her own volition. * * *"

The said contract was duly approved by the board of con-
trol on the 26th day of December, 1923, and appellee was placed

in the care and custody of the custodians named therein; and it is stipulated that she is still in the care and custody of said parties, in a private home within the state of Iowa.

The mother of appellee has since remarried, and appears as relator in this action. No question is raised as to the present fitness of the mother of said child to have the care and custody of said child; nor is there any question involved as to the proper fitness and character of the home in which the said child has been placed. Under the record, for the purposes of this opinion, it may be conceded that, so far as care, training, and welfare of the said child are concerned, the relator and the present custodians stand on an equal footing. The question involved is rather one of a legal right respecting the present status of appellee.

It is a well grounded rule that parents are the natural guardians of their children, and are *prima facie* entitled to their care, custody, and control; so that, if no other questions were involved in the case, the relator, as mother of the minor child, would, presumptively at least, be entitled to its care and custody. The legal relation between the relator and the said minor child has, however, been changed from that which ordinarily obtains between parent and child.

The statutes in force at the time of the placing of said child in the Iowa Soldiers' Orphans' Home are to be found in Code Supplement, 1913. Chapter 5-B, Title III, of said Supplement provides for the commitment of any child found to be neglected or dependent. The matter is now covered in greater detail in Chapter 180 of the Code of 1924.

Code Supplement, 1913, Section 254-a20, provides for the commitment of any child adjudged to be neglected or dependent to "the care of some suitable state institution," or otherwise, as set forth in the statute.

The statute then in force with respect to the Iowa Soldiers' Orphans' Home is Chapter 6, Title XIII, of the Code Supplement of 1913 (Code of 1924, Chapter 185). Code Supplement, 1913, Section 2690-b, provides:

"All children received in the Soldiers' Orphans' Home, whether admitted on application of a parent, guardian or other person or committed as dependent or neglected under the law as it appears in Chapter 5-B of Title III of the Supplement to the Code, 1907, shall when received become wards of the state.

Any child so received, unless adopted as authorized under the law as it appears in Section 2690-a of the Supplement to the Code, 1907, may be placed by the superintendent with any person or family of good standing and character where it will be cared for and educated properly. Such child shall be placed under articles of agreement to be signed by the person or persons taking the child and the superintendent, approved in writing by the board of control of state institutions, which articles shall provide for the custody, care, education, maintenance and earnings of the child for a time to be therein fixed which shall not extend beyond the time when the child shall attain its majority.''

Section 2690-a of the said Code Supplement of 1913 provides for the adoption of a neglected or dependent child so committed to a state institution.

Code Supplement, 1913, Section 2690-c, clothes the board of control with power to cause any child to be taken from the person or persons with whom it is placed, in the event that the articles of commitment with regard to the care, education, treatment, and maintenance of said child are not carried out; and Code Supplement, 1913, Section 2690-d, provides that:

''It shall not be lawful for any parent or other person not a party to the placing of a child by adoption or for a term of years under the provisions of this act, to interfere in any manner with or to assume or exercise any control over such child or his earnings while so placed, but such earnings shall be used, held, or otherwise applied for the exclusive benefit of the child.''

It is apparent from these provisions of the Code that the legislature has provided two methods by which neglected and dependent children which have been legally committed to the Iowa Soldiers' Orphans' Home may be taken from said home. One is by the execution of proper articles of adoption. The other is by what is called a ''placement'' contract. By the terms of the statute, children which are so legally committed to the said Soldiers' Orphans' Home become from that time wards of the state.

No question is involved in this case of the right of the state to execute articles of adoption of said children, with all the usual and ordinary legal results that follow the execution of such articles. The child in question in this case was legally

committed to the said Soldiers' Orphans' Home as a neglected and dependent child. After such commitment, it became a ward of the state. Pursuant to the provisions of the statute, the child was thereafter placed under contract by appellant, as superintendent of the said Soldiers' Orphans' Home. The contract contained the provisions required by the statute. There is no contention whatever in this case that the contract has not been strictly fulfilled by the parties thereto.

Provision is made in the statute for a recovery of such child by the board of control in the event of a violation of the contract, and Section 2690-d expressly provides that it shall be unlawful for any parent to interfere in any manner with or to assume or exercise any control over such child or his earnings while the contract is in force. The purpose and intent of this legislation are obvious. It is a well known fact that, when a child of tender years is taken from its own home and placed with foster parents, new adjustments are very rapidly made. The general rule is that the child speedily becomes attached to the new home and its inmates, and in a vast majority of cases the affection is reciprocal. The ties between such child and its foster parents oftentimes become quite as strong as between those in the relation of natural parent and child. It is a matter of common knowledge that to permit a conflict of authority or of claims upon affection between the natural parents and the foster parents often breeds unhappiness and discontent, and greatly militates against the proper care, training, and development of a child of tender years. It is no doubt because of the knowledge of such conditions that the legislature, by express enactment, provided that a child which has legally become a ward of the state and has been placed in a home by adoption or contract should not be interfered with thereafter in any manner by the natural parent of such child. The state, by virtue of the statutes, steps in as *parens patriae*. It is to be noticed that the child becomes a ward of the state only after proper judicial proceedings, with notice and hearing and an adjudication that the child is in fact neglected, dependent, or delinquent. When such adjudication has been had, the child forthwith becomes a ward of the state. The right of the parents to its custody and control, by virtue of their parenthood, is, by such decree, foreclosed and cut off. The state thenceforth assumes respon-

sibility for the child as its ward. The policy of the state, as evidenced by the statute, is clear and apparent. It is not only the right of the state to assume guardianship of its neglected, dependent, and delinquent children, but it is made the duty of the state so to do. Vested with this large responsibility ·in the care of neglected, dependent, and delinquent children within the commonwealth, the state authorities are clothed by statute with the corresponding power and duty to adequately care for such children. It requires no argument in these times to demonstrate that, as a general thing, the place for a neglected and dependent child which is not delinquent is within the protection and guardianship of a good private home, rather than within the confines of an institution, no matter how well said institution may be managed or how beneficent its purposes may be. It was with the object in view of providing that the neglected and dependent wards of the state might have the privileges and opportunities that come from being reared and nurtured in suitable and proper homes, rather than be retained during the years of childhood in an institution, that these beneficent statutes were enacted. In strict pursuance of the statutes, appellee was, after proper notice, adjudged to be a neglected and dependent child. It thereupon became a ward of the state, and the rights of the relator to the custody of such child because of her relationship as parent to said child ceased as effectively as though she had, by the execution of legal papers of adoption, transferred the right of the custody of said child to another party. The state then, by virtue of the legislative enactment, was clothed with the power to legally give said child to a third party; and this it could do as effectively as could its parents. It is obvious that it is difficult to always find parties who are willing to at once legally adopt a neglected or dependent child. There are so many questions involved and so many complications likely to arise that often it is desirable on the part of all parties concerned that such child shall be placed in a home under a contract, where it can be, as it were, for a term, on probation. The child may not be adapted to the home, and the home and its surroundings may not turn out to be best suited for the welfare of the child. But once formal adoption papers have been executed, it is not easy to change the status thus created. Doubtless with this situation in mind, the legislature enacted the comparatively

new statute by which neglected and dependent children who are wards of the state can be placed in suitable homes under contract, and still be under the supervision of the board of control of the state, and subject to being taken from such homes. Such contracts may frequently, under favorable circumstances, lead to the execution of articles of adoption. It is to be noticed that the state is clothed with power to terminate such a contract unless it is fully carried out on the part of the parties receiving the child thereunder. The legislature in its wisdom saw fit to declare by legislative enactment that the parents of such child should not interefere with it in any manner.

We have recently had occasion to discuss, indirectly, the questions involved in this case in *Lieske v. Iowa Childrens' Home Soc.*, 196 Iowa 143, in which we held that the natural parents who had been legally deprived of the custody of their child were not entitled to have disclosed to them the present whereabouts of said child.

The power of the state, under the provisions of the statute, where it has legally assumed control of neglected and dependent children, is to execute legal articles of adoption for such children, or to place said children under a contract, upon the terms and conditions provided by the statute. The state is acting clearly within its proper power in proceeding in either of the methods designated by the statute. The relator is in no better position to claim the custody of appellee because she has been placed under a contract authorized by statute than she would be if the child had been adopted, and were now in the custody of foster parents, under articles of adoption. The status of natural parent and child has been legally changed by proper judicial proceedings. A new status has been created, as authorized by the statute. It would seriously interfere with, hamper, and impair the work of the state if, under such circumstances, the natural parent could now interfere with the right to the custody and care of such child after it has legally become a ward of the state, at least without any showing of a want of proper care by the state. The statutes must be sustained and upheld according to their express provisions, and in order to carry out their plain, obvious, and apparent purpose. To compel appellant, as superintendent of the Iowa Soldiers' Orphans' Home, to deliver said child to the custody of the relator, notwithstand-

ing the new alliance that had.been made under a contract authorized and contemplated by the statute, would result in a complete undoing of the express and definite thing intended to be created by the statute, to wit, the formation of a new legal relationship that involved the custody of the child. The beneficent purpose of the statute cannot and should not be defeated, under such circumstances. There is no claim that the child is not receiving proper care and attention with the parties .with whom it has been placed under said contract. It is to be presumed that the state officers will exercise their full duty in regard to said matter, and ample provision is made for the cancellation of the contract in case of violation of its terms and conditions on the part of · the parties thereto.

The order appealed from must be, and it is,—*Reversed.*

DE GRAFF, C. J., and EVANS, STEVENS, and VERMILION, JJ., concur.