MAXINE MARIE MURPHY, Appellant, v. THOMAS B. LACEY, Superintendent of Glenwood State School, et al., Appellees.

No. 46807.

MARCH 5, 1946.

Whitney Gillilland, of Glenwood, for appellant.

John M. Rankin, Attorney General, Robert L. Larson, Assistant Attorney General, and W. R. Byington, County Attorney, for appellees.

MILLER, J.—■ On June 29, 1939, hearing was had in the juvenile court for Madison county upon a complaint of the county attorney which charged that Maxine Murphy, ten years old, was delinquent, incorrigible, growing up in crime, but not feeble-minded. Judge Norman R. Hays, sitting as such juvenile court, determined that the child was incorrigible and committed her to the Iowa Soldiers' Orphans Home at Davenport "or to such institutions as the Iowa Board of Control may see fit to transfer her to." The child was admitted to the Davenport Home on July 7, 1939. Thereafter the board of control, purporting to act pursuant to sections 3648, 3701, and 3710, Code, 1939, after psychological study and examination found the child to be feeble-minded, and, on March 14, 1942, "upon the verbal recommendation of Doctor Harold M. Skeels, and Ruth L. Thompson, psychologists, and Ethel Nichols, Secretary Children's Division, Bd. of Control," ordered her transferred to the Glenwood State School at Glenwood. Said transfer was made on March 16, 1942.

On December 22, 1944, there was filed by the child's father, in behalf of the child, in the district court at Glenwood a petition for a writ of habeas corpus which set forth the facts heretofore stated, and asserted: The child's mental condition has not changed since she was first committed to the Davenport Home; the juvenile court was without jurisdiction of feeble-minded persons; if the child was then feeble-minded, that court had no jurisdiction, the commitment to the Davenport Home was void, and the board of control acquired no authority over her; the order of the juvenile court adjudicated that she was not then feeble-minded, is con-

clusive upon the board of control and the superintendent of the Glenwood State School and they have no authority to restrain her as a feeble-minded person.

The answer to said petition admitted the facts stated in the first paragraph of this opinion, supra, but controverted the allegations of the petition as stated in the last preceding paragraph, supra, and asserted: The court has no jurisdiction of this action because the petition fails to set forth any of the grounds therefor as specified by section 3440, Code, 1939, and the findings of the juvenile court are not subject to the collateral attack here made upon them.

On January 4, 1945, plaintiff's petition herein was amended to assert: Plaintiff's admission to the Glenwood State School was not voluntary, was not by parents, guardian, or county attorney, was not pursuant to chapter 171, Code, 1939; the board of control did not follow section 3405 or chapter 171 of the Code, and was without power or authority to make said transfer to the Glenwood State School; the juvenile court, having adjudged plaintiff to be a delinquent and incorrigible child, was without power or authority to commit her to the Davenport Home, or to commit her to "such institution as the Iowa Board of Control may see fit to transfer her to"; the order of commitment was void on its face; the board of control did not acquire jurisdiction of plaintiff or power or authority to transfer her to Glenwood or anywhere else. On the same day plaintiff filed a reply which denied that she was ever found to be feeble-minded, and denied that she is feeble-minded.

At the trial the facts stated in the first paragraph of this opinion, supra, were stipulated. It was also stipulated that plaintiff was given a psychological examination at the Davenport Home and a finding was made that she was feeble-minded. It was not stipulated that she is in fact feeble-minded. By agreement of counsel, the report of two psychological examinations at Davenport by Ruth Thompson, psychologist, was admitted in evidence. This document recited: The first test was on August 1, 1939, and the second on June 20, 1941; the first test showed that she was eleven years old but her mental age was seven years, ten months, her I. Q. 71, her

classification borderline; the second test showed her age twelve years, eleven months, her mental age eight years, eight months, her I. Q. 67, her classification "mental retardation at the high grade level. (Indicates definite feeble-mindedness.)" The report further stated:

"The present test results indicate that Maxine is sufficiently retarded mentally to be classified as definitely feeble-minded, and are confirmed by her school progress and general adjustment. On the test today Maxine was co-operative and tried very hard. In no ability did she approach her age level. All tests at year 7 were passed, two at eight, three at 9 and ten, and two at 11, none beyond. Retardation is general but she is especially poor in comprehension and reasoning ability. * * * Maxine is in good health and physical condition. She reports to the clinic, however, about twice daily with imaginary or inconsequential difficulties, simply because she craves attention. * * * Although Maxine's history indicated she had repeated fourth grade, it was necessary to place her back in the third here. She passed and entered fourth in September 1940. Since school is closed here and principal and teachers gone it is impossible to give any information as to her accomplishments and behavior the past year. Maxine states she received no failing grades and is sure she will be in the fifth grade next year. * * * Maxine is unable to hold her own among other girls here. To some extent she is picked on by them and blamed for their misdemeanors. She is usually by herself in her free time and seems to have no particular friends. She is aware of this and seeks adult attention to the extent that she is regarded as somewhat of a 'pest.' Under constant supervision she can do acceptably simple cleaning, washing dishes, and errands, is unable to master a routine or remember particular tasks she is to do from one day to the next. Unless watched closely she will slight tasks she finds disagreeable. She has no vicious or mean characteristics, is not a sex problem here, and her faults are chiefly a result of her low mentality. * * * Standard tests of intelligence, school progress and general adjustment indicate that Maxine is definitely feeble-minded. The prognosis for adequate, inde-

pendent adjustment in a community as an adult is quite poor. While for a few years under close and careful supervision she might not present any special problems in view of her past history and experience the time will very likely come when she will. She is not a child that could be placed in the home of strangers, and if the parents seem at all capable of supervising her there is little to be lost as far as Maxine herself is concerned by a trial period. If she can be happy there and keep out òf difficulties, it might be possible for her to remain with them and consider the possibility of sterilization in a few years, before she reaches the age of discharge."

It was also stipulated that the legality of plaintiff's confinement at Glenwood had not been previously adjudged, no other writ of habeas corpus had been sought, her admission to Glenwood was not voluntary or by parents, guardian, or county attorney and was not made pursuant to section 3405 or chapter 171, Code, 1939.

Pursuant to the foregoing record, the court entered a decree which determined: Plaintiff is not illegally restrained; the board of control had legal authority, under section 3648, Code, 1939, to transfer plaintiff from the Davenport Home to the Glenwood State School, pursuant to the order of the board on March 14, 1942, upon a finding that plaintiff was feeble-minded; whether plaintiff should have been committed to some other institution than the Davenport Home by Judge Hays on June 29, 1939, is immaterial herein because his finding of the fact of delinquency of plaintiff is the controlling factor rather than the place of commitment. Accordingly, the petition was dismissed and the writ of habeas corpus was denied. Plaintiff has appealed to this court.

I. In seeking a reversal herein appellant advances two propositions: (1) The board of control has no power to transfer a child, committed by the juvenile court to the Iowa Soldiers' Orphans Home, without' complying with the provisions of chapter 171, Code, 1939, entitled "Guardianship and Custody of Feeble-Minded," or with section 3405, contained within chapter 170 relating to the Glenwood State School (2) a juvenile court has no authority to commit a

delinquent to the Soldiers' Orphans Home. It will be noted that neither in the trial court nor in this court is there any challenge to the constitutionality of any statute. Appellee's position is stated thus: (1) The board of control had legal authority, under the provisions of section 3648, Code, 1939, to transfer appellant from the Davenport Home to the Glenwood State School, pursuant to the order of said board finding that appellant was not mentally normal and her presence in the home would be inimical to the moral and physical welfare of normal children therein as provided in sections 3648 and 3710, Code, 1939 (2) the judgment entered by the juvenile court having jurisdiction of the person and subject matter may not be assailed in habeas corpus proceedings.

II. As above stated, the first proposition asserted by appellant involves an interpretation of various statutes relating to juveniles and feeble-minded persons. Included in chapter 180 of the Code, relating to "Neglected, Dependent, and Delinquent Children," sections 3646 to 3649 provide for commitments to the three types of juvenile institutions: (1) the orphans' home at Davenport (2) the juvenile home at Toledo (3) the training schools at Eldora (boys) and Mitchellville (girls).

Section 3646 provides in part as follows:

"1. If the child is neglected or dependent and not delinquent, it shall be committed either to the soldiers' orphans home or to the state juvenile home. 2. If the child is delinquent and under the age of ten years, it shall be committed to the state juvenile home. 3. If the child is over the age of ten years and, in the opinion of the court or judge is seriously delinquent or so disposed, it shall be committed to the state training school for boys or for girls, as the case may be; but married women, prostitutes, and girls who are pregnant shall not be committed to the training school. 4. If the child is over the age of ten years and, in the opinion of the court or judge, is not seriously delinquent nor so disposed, it shall be committed to the state juvenile home."

Section 3647 provides as follows:

"It is the intent of section 3646 to so classify commitments that the merely neglected and dependent child will not be associated with the delinquent, and that delinquent children will be so segregated that the least delinquent will not suffer by association with those of greater delinquency."

Section 3648, upon which appellee relies, provides as follows:

"The board of control, at any time, for the purpose of effecting, as nearly as practicable, the declared intent of this chapter, may transfer an inmate of any of said three state institutions to any other of said institutions. It may also transfer any feeble-minded child from said institutions to the institution for feeble-minded [Glenwood] or to the hospital for epileptics and school for feeble-minded. The expense of such transfers shall be charged to the support fund of the institution from which the transfers are made."

Section 3649 provides as follows:

"Commitments shall be until the child attains the age of twenty-one years, but the board of control may release or discharge the child at any time after it has attained the age of eighteen years if such action will, in the judgment of the board, be best for the child."

Section 3710, included in chapter 185, relating to the Davenport Home, provides as follows:

"The board of control may transfer to the home minor wards of the state from any institution under its charge; but no person shall be so transferred who is not mentally normal, or who is incorrigible, or has any vicious habits, or whose presence in the home would be inimical to the moral or physical welfare of normal children therein, and any such child in the home may be transferred to the proper state institution."

It is clear that, under the provisions of the foregoing statutes, if an inmate of any of the three types of institutions at Davenport, Toledo, Eldora, or Mitchellville, should be

found to be feeble-minded, the board has express statutory authority to transfer such feeble-minded inmate to the institution for feeble-minded at Glenwood. The crux of the controversy before us is, How must such inmate be found to be feeble-minded? Appellant contends:

"* * * that an independent authority is not granted by section 3648 or 3710, and that any authority there granted is intended to. depend upon and be exercised through the medium of and by conformity with the ordinary provisions of the statute concerning admissions to Glenwood State School, to wit, chapter 171 or Code section 3405."

Section 3405, included in chapter 170, relating to the Glenwood State School, provides as follows:

"Admission to said institution may be either voluntary, by parents, guardian, or county attorney, under such rules as the board 'may prescribe, or by commitments under chapter 171 of this title. The board may at any time return any inmate to its parent or guardian, even though committed by a court."

Chapter 171 provides the method whereby one may be adjudged to be feeble-minded after trial in the district court and be committed by the district court to an institution for feeble-minded. Section 3428, included in said chapter, provides as follows:

"If it be found that said person is feeble-minded, and that it will be conducive to the welfare of such person and to the community to place such person under guardianship, or to commit such person to some proper institution for treatment, the court or judge shall, by proper order: 1. Appoint a guardian of the person of such person, provided no such guardian has already been appointed. 2. Commit such person to any state institution for the feeble-minded. 3. Commit such person to a private institution of this state, duly incorporated for the care of such persons, and approved by the board of control, provided such institution is willing to receive such person."

It was stipulated at the trial that plaintiff's admission at Glenwood was not made pursuant to section 3405 or chapter 171. Accordingly, if, in interpreting the words "may be" in the first phrase of section 3405 we should hold that the language is mandatory, and the word "may" means "must," then, obviously, the trial court erred. Appellant, of course, contends that it is mandatory, whereas appellee contends that it is directory.

We are of the opinion and hold that section 3405 is not mandatory so that it limits all admissions to the Glenwood School. It obviously relates to original admissions. Section 3648 relates to transfers between institutions and was intended to be in addition to provisions for original admissions. To hold that chapter 171 must be complied with before the board of control could act under section 3648 would render section 3648 meaningless, because the transfer would not be made by the board but by the district court. Also, to hold that the other provisions of section 3405 must be complied with before the board could act under section 3648 would likewise render section 3648 meaningless, because the transfer would not be made by the board but by the desire of the inmate, the parents, guardian, or county attorney.

The underlying philosophy which apparently prompted the legislature to make the provisions which are included in section 3648 is ably stated by Judge Faville, in the case of Stephens v. Treat, 202 Iowa 1077, 1082, 1083, 209 N. W. 282, 284, as follows:

"The state, by virtue of the statutes, steps in as *parens patriae*. It is to be noticed that the child becomes a ward of the state only after proper judicial proceedings, with notice and hearing and an adjudication that the child is in fact neglected, dependent, or delinquent. When such adjudication has been had, the child forthwith becomes a ward of the state. The right of the parents to its custody and control, by virtue of their parenthood, is, by such decree, foreclosed and cut off. The state thenceforth assumes responsibility for the child as its ward. The policy of the state, as evidenced by the statute, is clear and apparent. It is not only the right of the

state to assume guardianship of its neglected, dependent, and delinquent children, but it is made the duty of the state so to do. Vested with this large responsibility in the care of neglected, dependent, and delinquent children within the commonwealth, the state authorities are clothed by statute with the corresponding power and duty to adequately care for such children.''

As heretofore stated, we are not presented with any challenge to the constitutionality of section 3648. We are not asked to pass upon the power of the legislature to so provide. That question is not before us. Martin Bros. Box Co. v. Fritz, 228 Iowa 482, 492, 292 N. W. 143, and cases cited. We are called upon merely to say what the section means as it stands. Under the record before us, when this matter was before the juvenile court it was expressly alleged that this child was not feeble-minded. The order of the juvenile court undoubtedly was entered on that basis. When this child was tested in 1939, shortly after her commitment to Davenport, she was classified as borderline. When she was tested in 1941 she was classified as feeble-minded. Acting on the report of these tests, in 1942 the board of control found her to be definitely feeble-minded and the transfer was ordered pursuant to sections 3710 and 3648 of the Code. This transfer was authorized by said sections.

III. Appellant's second proposition relates to the order of the juvenile court which committed appellant to the Davenport Home. Appellant relies upon the provisions of section 3619, which defines an incorrigible child as being a delinquent child; section 3646, hereinbefore quoted, which provides that commitments to the Davenport Home shall be of children who are "neglected or dependent and not delinquent"; section 3708, included in chapter 185 relating to the Davenport Home, which provides for commitments there of destitute, neglected, or dependent children. Under these statutes, Judge Hays' finding that appellant was incorrigible and therefore delinquent excluded her from being qualified to be committed to the Davenport Home. The original commitment was erroneous. But that does not mean that the

judgment was a nullity. The order was tentative. It committed appellant to the Davenport Home "or to such institutións as the Iowa Board of Control may see fit to transfer her to." She was placed in the custody of the board of control because she was incorrigible. If the place of original commitment was erroneous, the board was recognized as having statutory power to correct the error.

In the recent case of Convey v. Haynes, 230 Iowa 485, 298 N. W. 647, 134 A. L. R. 966, we held that, where one had been convicted of murder, if the court had jurisdiction of the person and the subject matter, the judgment could not be collaterally assailed in a habeas corpus proceeding. We need not now decide whether an erroneous commitment would entitle one to no relief at all by habeas corpus because of this situation: the juvenile court had jurisdiction of appellant and the subject matter; if there was error in the place of original commitment, the remedy was by appeal or by application to the board of control; the error cannot now be made the basis for a collateral attack on the judgment by habeas corpus proceedings because the board of control has transferred appellant, pursuant to statutory authority, to another and proper institution. Decisions of other courts which tend to support our conclusion herein include: Baker v. Krietenstein, 185 Ind. 693, 114 N. E. 445; State ex rel. Flatter v. Hiatt, 192 Ind. 154, 135 N. E. 577; Ex parte Bond, 9 S. C. 80, 30 Am. Rep. 20; State ex rel. Kelly v. Wolfer, 119 Minn. 368, 138 N. W. 315, 42 L. R. A., N. S., 978, Ann. Cas. 1914A, 1248; People ex rel. Devoe v. Kelly, 97 N. Y. 212; In re Harris, 68 Vt. 243, 35 A. 55; Ex parte Williamson, 116 Wash. 560, 200 P. 329; Ex parte Barr, 79 W. Va. 681, 91 S. E. 655; Ex parte Vass, 90 W. Va. 220, 110 S. E. 558; Ex parte Burden, 92 Miss. 14, 45 So. 1, 131 Am. St. Rep. 511; Ex parte Tani, 29 Nev. 385, 91 P. 137, 13 L. R. A., N. S., 518; In re Coffeen, 38 Mich. 311.

The cause is—Affirmed.

All JUSTICES concur.